## Case No. 11,959.

ROBINSON v. MANDELL et al.

[3 Cliff. 169; 3 Am. Law Rev. 377.] [1]

Circuit Court, D. Massachusetts. Oct., 1868.

PLEADING IN EQUITY — EFFECT OF DENIAL OF KNOWLEDGE IN ANSWER—WITNESS—COMPETENCY—PARTY IN INTEREST — MUTUAL WILLS — EQUITY.

1. If the respondent have no personal knowledge of the matter set forth in any particular allegation of the bill of complaint, a denial by the respondent upon information and belief is sufficient to make it necessary for the complainant to prove the same.

2. The obvious purpose of the act of July 16, 1862, as to the competency of witnesses in the United States courts, was to bring the state and federal courts into a more harmonious course of decision upon this subject.

[1] [Reported by William Henry Clifford, Esq., and here reprinted by permission. 3 Am. Law Rev. 377, contains only a partial report.]

3. The effect of the act of July 2, 1865, was to produce diversity between the rules of decision, in the state and federal courts.

4. By the act of March 3, 1865, it is provided, that neither party shall be allowed to testify against the other, under the circumstances described in the act, unless called by the opposite party, or required to testify by the court.

5. The several acts of congress, as to the competency of witnesses, indicate an intent upon the part of congress to legislate that evidence of title to real estate and rules of decision in all controversies affecting rights of property shall be the same in the federal and state courts of the same state and district.

6. Where an executor or administrator is a party under the law of this state, the other party cannot be admitted to testify in his own favor, unless the contract was originally made with a party who was living, and competent to testify, and therefore the complainant in this case was not a competent witness to testify to any transaction with, or statement by, the testatrix.

7. Equity acknowledges the rule that a representation made by one party for the purpose of influencing the conduct of the other party will in general be sufficient to entitle such other party, if induced to act upon such representation, to relief.

8. Such representations must be proved by the party who alleges they were made.

9. In this case it was *held* that the alleged contract that the complainant and Sylvia Ann Howland were to exchange wills, and neither to make any new will, without first returning to the other the will thus received, was not proved.

10. Where two persons agree to make mutual wills, and both execute the agreement, it is *held* that neither can properly make a will without notice to the other.

11. Equity only interposes to enforce the agreement.

12. In this case there was no competent evidence to show that there was any agreement as to the making of mutual wills, and there was nothing on the face of the instruments to warrant any such conclusion.

This was a bill in equity [by Hetty H. Robinson against Thomas Mandell and others] setting up a special contract for an exchange of wills between the complainant and Sylvia Ann Howland, and that neither should make any other will without notice to the other, and the return of other's will. Complainant alleged that she was the niece and sole heir-at-law of Sylvia Ann Howland, deceased, leaving a will disposing of her estate; that in the month of September, 1860, she, the complainant, was possessed in her own right of property derived from her mother, who was the sister of the testatrix; that her aunt, then in full life, was at that time at variance with the father of the complainant, and was desirous of excluding him from inheriting, by will or otherwise, from the complainant any part of the property she so derived from her mother, and to exclude him, in case she, the complainant, should survive her aunt, from inheriting any part of the property that she, at the decease of her aunt, should derive from her aunt's estate. Actuated by those motives, the bill of complaint alleged that the said

Sylvia Ann at the same time requested the complainant to make a will disposing of her estate, so that in case of her decease before her father, he should not in any manner, by will or otherwise, inherit any part of the property so derived, or to be derived, and promised the complainant, if she would comply with the request, that she, the decedent, would make her will in favor of the complainant; and the allegation was, that it was at the same time mutually agreed between the parties that the respective wills, so to be made, were to be exchanged, and that each was to have possession of the will of the other, and that neither was to make any other will without notifying the other, and returning the other's will so to be held in exchange. Performance of the agreement on the part of the complainant was also alleged in the bill of complaint. The substance and effect of those allegations were, that the complainant, in pursuance of her promise, did, on the same day, make and execute a will in due form, by which all the property she then had, or might thereafter acquire, was given and devised to her issue if any, and in default thereof to charitable uses, and that she did thereby exclude her father from all benefit from the will, as specially requested by her aunt, so that in event of her decease before her father, he would not, by inheritance or otherwise, be entitled to any part of her estate; that the will so made and executed was delivered to her aunt, by whom it was kept during her lifetime, and among whose papers it was found after her decease. Part performance of the contract on the part of the said Sylvia Ann was also alleged, to the effect that she at the same time, in conformity to her promise, caused a draft to be made of her own will, which was not then completed; but the averment is, that the completion of the same was postponed, with the clear understanding that the will so drawn should be executed and delivered to the complainant under the agreement, whenever she should request the same to be done; and she also averred that she did afterwards make that request, and that the said Sylvia Ann did, on the 11th of January, 1862, complete, sign, and duly execute that draft, as her last will and testament; that before executing the same she signed the paper writing therein called the second page of the will, and that the same was attached to the will before the will was so signed and executed. Delivery of the will so made and executed to the complainant, in pursuance of the agreement, was also alleged, with the paper writing thereto attached; and the complainant averred that the will so made and delivered to her remained in her possession, and that her own will was never returned to her, and that she was not at any time or in any way ever notified that the said Sylvia Ann had made or was about to make any other will. The alleged breach of the agreement was, that

notwithstanding her promises, the said Sylvia Ann did make another will, bearing date September 1, 1863, appointing therein the first-named respondent as executor, and also made a codicil to the same bearing date November 18, 1864, giving and devising a large part of her property to divers persons and corporations, to the exclusion of the complainant, and that she gave and devised the residue of her estate to the other three respondents, in trust, to pay the income thereof to the complainant during her life; and that she made no other provision for the benefit of the complainant, and none whatever for her issue; and that she afterwards on the 2d of July, 1865, deceased, possessed of large real and personal estates. The prayer of the bill of complaint was, that the first-named respondent, as executor, might be declared to hold the personal estate in trust for the complainant, and that the other respondents might be declared to hold the real estate in trust for her benefit, and that all the respondents might be decreed to account with her, and to deliver to her all the real and personal estate of the deceased. The respondents admitted that the complainant was the niece and sole heir-at-law of Sylvia Ann Howland, but they denied that the latter was at variance with the father of the complainant. They not only denied that any such motive existed for the alleged request, but averred that the complainant herself was at variance with her father, and that she had repeatedly declared that she would make her will, and keep her father from "receiving any portion of the property she had derived from her mother." Specific reference was also made in the answer to the several allegations in the bill of complaint, in respect to the wills and the alleged agreements, as to the exchange and custody of the same, but it is unnecessary to reproduce that part of the answer, as the respondents alleged that they had no knowledge whatever upon the subject. Unable to answer in that behalf from knowledge, they denied upon information and belief "each and every of said averments in said bill of complaint contained."

Sidney Bartlett, B. R. Curtis, and F. C. Loring, for complainant.

B. F. Thomas, T. D. Eliot, and T. M. Stetson, for respondents.

CLIFFORD, Circuit Justice. Evidently the cause of action set forth in the bill of complaint is founded in contract, and consequently the rights of the parties must be ascertained from the pleadings and proofs as required by the ordinary rules of law and equity applicable in such controversies. Unless the contract is admitted in the answer, the burden of proof in such a case is upon the complainant to prove the same substantially as alleged in the bill of complaint. Where the respondent has no personal knowledge of the matter set forth in any particular allegation of the bill of complaint, a denial by the respondent upon information and belief is sufficient to make it necessary for the complainant to prove the same, and in view of that rule the burden to prove the alleged contract in this case is upon the complainant.

Before proceeding to consider the merits of the case it becomes necessary to determine as a preliminary question whether the complainant is a competent witness in the case in her own favor, and if so, to what extent, and whether her testimony or any part thereof as exhibited in her deposition taken at her request is admissible in evidence to prove the alleged contract. On the 27th of March, 1866, the complainant by petition represented to the court that the interests of justice required, in her belief, that she should be allowed by the court to testify generally as a witness in this case, and prayed that an order to that effect might be passed by the court. Both parties were heard on the subject of the petition, and on the 28th of June, in the same year, the court passed the order against the objections of the respondents, that the complainant might be examined generally as a witness in the cause, reserving the questions as to the competency of the witness and the admissibility of the evidence for further consideration at the final hearing. Pursuant to that reservation the several questions involved in the petition were again discussed by the parties at the final hearing, and the court will now proceed to state their final determination of these several questions, and the reasons upon which that determination is founded. By the act of congress of the 16th of July, 1862, it was provided that the laws of the state in which the court shall be held, shall be the rules of decision as to the competency of witnesses in the courts of the United States in trials at common law, in equity and admiralty. 12 Stat. 588. Prior to that time, the only provision in the acts of congress upon the subject was that contained in the thirty-fourth section of the judiciary act, which provides that the laws of the several states, except where the constitution, treaties, or statutes of the United States shall otherwise require or provide, shall be regarded as rules of decision in trials at common law in the courts of the United States, in cases where they apply, but it is well-settled law that that provision does not apply in suits in equity, or in causes of admiralty and maritime jurisdiction. 1 Stat. 92. Although the supreme court decided, in repeated instances, that by virtue of that provision the laws of the states, and the decisions of the state courts, were rules of decision in the federal courts in common-law controversies affecting the title of property, yet there was some contrariety of opinion whether an act of the state legislature providing that the parties to the suit should be competent witnesses had the effect to qualify them as such in

the federal courts. Undoubtedly the intention of congress in enacting that provision was to remove that doubt and to require that the rule of decision not only in trials at common law, but in equity and admiralty, should be the same in the federal courts as in the state courts. The obvious purpose of the provision was to introduce more fully into the federal courts the rules of decision in respect to all matters of property and local interest, which prevailed in the state courts, and to bring the several courts of the federal and state governments into a more uniform and harmonious course of decision upon all such subjects. The next provision in the acts of congress was that passed on the 2d of July, 1865, which was, "that in the courts of the United States there shall be no exclusion of any witness on account of color, nor in any civil actions, because he is a party to, or interested in, the issue tried." 13 Stat. 351. The immediate effect of the provision that no witness should be excluded in a civil action because he was a party to, or interested in, the issue tried, was to introduce diversity into the rules of decision in the federal courts, as compared with the rules of decision prevailing in the state courts in the same district, as will be seen by reference to the statutes of this state. Provision was made by the General Statutes of this state (chapter 131, § 14), that parties in civil actions and proceedings . . . . shall be admitted as competent witnesses for themselves or any other party, . . . . provided that where one of the original parties to the contract or cause of action in issue and on trial is dead, the other party shall not be admitted to testify in his own favor unless the contract in issue was originally made with a person who is living and competent to testify, except as to such acts and contracts as have been done or made since the probate of the will, or the appointment of the administrator. Gen. St. Mass. 673. Certain exceptions are made in subsequent acts of the legislature, but they are not material in this case. Sess. Acts 1864, c. 304, § 1; Supp. Gen. St. 361; also, Sess. Acts 1865, c. 207, §§ 1, 2; Supp. Gen. St. 407. Like diversities were introduced by the last two clauses of that provision into the rules of decision in the federal courts of many other districts, as compared with the rules prescribed for the state courts in the same district by the state legislature, but it is unnecessary to enter into such details. Congress became aware of the embarrassment, and on the 3d of March, 1865, passed an amendatory act providing that in actions by or against executors, administrators, or guardians, in which judgment may be rendered for or against them, neither party shall be allowed to testify against the other as to any transaction with or statement by the testator, intestate, or ward, unless called to testify thereto by the opposite party, or required to testify thereto by the court. 13

Stat. 533. The material words of the provision to be considered in this case are, that neither party shall be allowed to testify against the other in the cases and under the circumstances therein described, unless "required to testify thereto by the court," as it is not pretended that the complainant was called to testify thereto by the opposite party. Strictly construed, the petition of the complainant did not pray that she might be required by the court to testify in the case as to any transaction with or statement by the testatrix, but as the prayer was that an order might be passed that she might be allowed to testify generally as a witness, no exception was taken to the form of the petition, and the order as recited was passed, reserving to the court the right to determine the questions involved in the petition at the final hearing of the case. The views of the respondents at the time the petition was presented and at the final hearing were, that by the true construction of the phrase "unless required to testify thereto by the court," it only had the effect to save from the operation of the prohibition that neither party should be allowed to testify, the power vested in the court when sitting as a court of equity, to admit parties to be examined in certain cases as universally acknowledged and frequently practised in equity courts. Stated in other words, the proposition of the respondents is, that the act of congress in question does not authorize the examination of the complainant in any case where it was not allowed in the practice of chancery courts before that provision was passed. They contend that the exception, unless required to testify thereto by the court, means nothing more than if it read, unless required to testify thereto by the court in accordance with equity practice. Interest undoubtedly disqualifies a witness in an equity suit as well as in actions at law, unless it is otherwise provided by statute. Gres. Eq. Ev. 237; 2 Daniell, Ch. Prac. (3d Ed.) 885; 1 Smith, Ch. Prac. 343; Eckford v. De Kay, 6 Paige, 565; De Wolf v. Johnson, 10 Wheat. [23 U. S.] 367. Leave may be granted to examine a party on motion, if the motion is accompanied by an affidavit showing that he is not interested; but the order is never granted without saving all just exceptions for the benefit of the opposite party. Gres. Eq. Ev. 338; 2 Daniell, Ch. Prac. (3d Ed.) 886; Dixon v. Parker, 2 Ves. Sr. 222; Murray v. Shadwell, 2 Ves. & B. 401; Phillips v. Duke of Bucks, 1 Vern. 230; Rogerson v. Whittington, 1 Swanst. 39. Based on these authorities, the argument for the respondents is, that the only effect of the last exception in that act of congress is, that it reserves to the federal courts the power which they possessed before as courts of equity to require or allow a party not interested to testify in the case: but the court is of a different opinion, as the provision is general and applicable as well to the district court as to the circuit

court, and in common-law actions as well as in suits in equity. Cases have seldom or never before occurred where the right of a party to introduce evidence in support of the cause of action set forth in his pleading, depended in any manner upon the discretion of the court; but if congress sees fit to make such a provision, the court is of opinion that it is the right of a party to present such an application, and that it is the duty of the court to hear, and determine it whenever it is made in due form. Such an application is doubtless addressed to the discretion of the court, but it is a legal discretion, and our opinion is, that the court, in granting or refusing the application, ought to be governed as far as practicable by certain fixed rules, to be applied in all similar cases. Intrinsic difficulty, it is apprehended, may arise in every attempt to define such general rules, and perhaps it would be unwise to make any such attempt, except when an application is before the court calling for the decision of the court under the power conferred by the act of congress. New as the provision is, and called upon as the court is for the first time to determine its true meaning, the court is not disposed to go one step beyond what the necessities of the present case require. Viewed as a whole, the several acts of congress in relation to the competency of witnesses indicate an intent on the part of congress so to legislate that the evidences of title to real estate, and the rules of decision in all controversies affecting rights of property, shall be the same in the federal courts as in the state courts of the same state and district, and the decisions of the supreme court throughout the period since its organization tend strongly to the same end. Impressed also with the conviction that that course of legislation and of decision has been highly beneficial, we are of the opinion that the court ought not to grant such an application under the provision in question, in any case where the effect of granting it would be to adopt a rule of decision in the federal courts of the district, different from that which the legislature of the state has prescribed for the government of the state courts in all similar cases. Where an executor or administrator is a party, the other party, under the law of the state, cannot be admitted to testify in his own favor unless the contract in issue was originally made with a person who is living and competent to testify, and this court decides, that in such a case the court will not pass an order in a controversy respecting property, requiring the living party to testify in his own favor to any transaction with, or statement by, the testator or testatrix, intestate or ward, as the case may be. Obviously the case at bar falls within that rule, and the decision of the court is, that the complainant is not a competent witness in this case to testify to any transaction with, or statement by, the said testatrix, and that all such parts of her deposition as fall within that rule are rejected as inadmissible.

Unaided by the testimony of the complainant as to any transaction with, or statement by, the testatrix respecting the matters in controversy, the next question is, whether the other evidence in the case is sufficient to prove the alleged contract, and to entitle the complainant to a decree in her favor. The principal breach of the supposed contract as alleged is, that the said Sylvia Ann made another will in which Thomas Mandell is named as executor, and by which she gave a large part of her property to other parties, and devised the residue to Edward D. Mandell, George Howland, Jr., and William Gordon, in trust, for the purpose therein described. Complainant also charges by way of evidence, that the said Sylvia Ann, on one occasion, when advised by the said Gordon to make a will, stated that she preferred not to make a will if she could help it, on account of the complainant, adding that she had been obliged to promise the complainant that she would not make a will without letting her know it; and the complainant also charges that the said Sylvia Ann stated on another occasion to the same person, that she would make a will if it were not for that pledge or promise to the complainant; and the answer admits that these conversations did take place as alleged. But the respondents allege that at the time the last conversation took place, she added that she was obliged to make the promise, because "she dinned me and teased me and gave me no peace till I did." Due weight must also be given to all such portions of the deposition of the complainant as are not excluded under the rule hereinbefore explained. She cannot be excluded as a witness because she is a party to or interested in the issue on trial. Her testimony as to any transaction with, or statement by, the said testatrix is not admissible, but all the rest of the deposition, if otherwise unobjectionable, is competent evidence. She testifies in substance that she duly executed her will of the 19th of September, 1862, and that she gave it enclosed in a yellow envelope to her aunt, and that she never saw it afterwards until "a day or so" after her aunt's death, when it was handed to her, in the same envelope, out of the closet where her aunt's trunk was kept. Mrs. Brownell handed it to her, and it was opened, as she states, in a few minutes after, by Mr. Green, who is also a witness in the case. The statement of the complainant also is, that the same person handed her, at the same time, a white envelope, which contained a copy of the second page of her aunt's will, and also a copy of the other part of the will, a fragment of which only is introduced, the residue having been destroyed by mistake. These several exhibits, together with the supposed originals, were introduced in evidence by the complainant, and she also examined Edward H. Green, whose testimony

tends to confirm her statements, as to the finding of her own will in the yellow envelope; and he also testified that she showed him the papers in the white envelope, the evening after the funeral of her aunt, or the next evening, in the parlor of the house where she died. Evidence was introduced by the respondents tending to show that both these envelopes were put into the trunk of the deceased at the request of the complainant. Two witnesses examined by the respondents testified to that effect, but their testimony also tended to confirm to a considerable extent the statements of the complainant as to the time when and the place where they were found, and the principal circumstances attending the finding. The theory of the complainant is, that she made her own will at the request of the said Sylvia Ann, and in the form as requested, and that the said Sylvia Ann in consideration thereof promised the complainant that she would make her will devising her estate or the principal part thereof to the complainant, and that they mutually agreed with each other that neither would make another will without first complying with the conditions set forth in the bill of complaint. It was also a part of the agreement, as alleged, that the respective wills should be exchanged, and the argument is, that all the affirmative stipulations of the contract were fully performed, leaving nothing executory, except the negative stipulation that neither should make another will without first notifying the other and returning the other's will.

Entirely opposite views are submitted by the respondents in respect to every material element of the alleged contract. They deny that any such contract was ever made by those parties, or that any such motive existed for making it on the part of the said testatrix as is alleged in the bill of complaint. Although they do not question the genuineness of the will of the complainant, still they deny in the most positive terms that it was made at the request of the decedent, or that the latter in her lifetime ever promised the complainant, in consideration that she would comply with that request, that she, the said Sylvia Ann, would make her will and devise her estate or any part thereof to the complainant, or that the parties ever mutually agreed with each other that neither would make another will without first giving notice to the other, and returning the other's will, as before explained. It is also conceded by the respondents that the signature to the instrument described in the bill of complaint as the will of the said Sylvia Ann, dated January 11, 1862, is genuine; but they explicitly deny that the paper called the second page of the will was attached to that instrument before it was signed, or that it was ever any part of that instrument. On the contrary, they deny that it was ever signed by the said Sylvia Ann, and insist that it is a forgery. Much testimony was taken upon

that issue by the parties to the suit, and the discussion of the questions growing out of it occupied several days at the final hearing. Some of the questions discussed were new, and it must be admitted that they are highly important as affecting the rules of evidence in cases where the genuineness of written instruments is in contestation, but inasmuch as it does not become necessary to determine whether the paper is or is not genuine, the court is not inclined to decide those questions in this case. Viewed in any light, and assuming all the papers to be genuine, the evidence fails altogether, in the opinion of the court, to prove that any such contract was made by those parties as is alleged. Nothing of the kind can be reasonably inferred from the admissions of the answer. Taken in their widest sense, the conversations therein recited do not warrant the conclusion that the party represented as speaking, supposed, or intended to admit, that she had ever entered into any legal obligation not to make a will, or that she had made any contract whatever with the complainant within the legal meaning of that word, much less any such contract as that set forth as the foundation of this suit. The import of the first conversation, as recited in the bill and answer is, that she preferred not to make a will if she could help it, as she had been obliged to promise the complainant that she would not do so without letting her know it; but she characterized the promise as a pledge in the second conversation, and finally said to the effect that she was forced to make the promise to get rid of constant importunity. Such remarks in regard to an absent relative are quite too loose and indefinite to be regarded as evidence of any legal obligation, especially as they do not contain the slightest intimation of any mutual promise, or of any other consideration recognized in the law of contracts.

Apart from the inferences, if any, which may be drawn from the wills in question, there is no evidence in the case that the complainant made her will at the request of the aunt, or that the aunt, in consideration of a compliance with any such request, ever promised the complainant that she would made her will and devise her estate or any part thereof to the complainant, or that those parties ever mutually agreed to exchange wills, and that neither would make another will without first notifying the other and returning the other's will. Those several allegations combined constitute the foundation of the complainant's case, and if they are not proved the superstructure must fall. The supposed consideration for the alleged promise of the decedent is, that the complainant, in compliance with the request of her aunt, made her own will, devising her estate in a way to exclude her father from all benefit under it, and the proposition is, that having framed and executed her will as requested, on the faith of her aunt's promise, that if

she, the complainant, would do so, the aunt would make her will and devise her estate to the complainant, the promise of the aunt is valid and obligatory as falling within that class of contracts constituted by a promise or representation made by one person and acts done by another, on the faith of such promise or representation. Fry, Spec. Perf. § 187. Equity undoubtedly acknowledges the rule that a representation made by one party for the purpose of influencing the conduct of the other party will in general be sufficient to entitle that other party to substantial relief in case he or she is thereby induced to act upon it, and it appears that the representation is not made good. Hammersley v. De Biel, 12 Clark & F. 62, note; Maunsell v. White, 4 H. L. Cas. 1056. Such promises or representations, however, must be proved by the party who alleges that they were made, and if not proved his bill of complaint will be dismissed. The respondents deny that the rule suggested has any application to the case, and insist that the contract, even if proved as alleged, is void as against public policy, but in the view taken of the case it is not necessary to decide that point, as the court is of the opinion that the contract is not proved.

The views of the complainant also are, that the two wills set forth in the bill of complaint must be regarded as mutual wills, and that those instruments, together with the testimony describing the circumstances attending the finding of the will of the complainant and the copy of the other will in the trunk of the testatrix after her decease, afford sufficient evidence to support the material allegations of the bill of complaint, and to entitle the complainant to a decree. Admission may well be made that mutual wills, as understood in legal decision, afford evidence of a contract by the respective testators, each with the other, more or less strong, in view of the surrounding circumstances, that neither would revoke his will or make another without due and seasonable notice to the opposite party; but the insuperable difficulty in the complainant's case is, that the two wills under consideration are not mutual wills in any proper sense, as recognized in the law of evidence or the decisions of the courts. Where two persons agree each with the other to make mutual wills, and both execute the agreement, it is held that neither can properly revoke his will without giving notice to the other of such revocation. The death of one of the parties in such a case carries his part of the contract into execution, and the better opinion perhaps is, that the other party, after that event, if the agreement was definite and satisfactory, cannot rescind the contract. Dufour v. Pereira, 1 Dickens, 419; 2 Harg. Jurid. Arg. 272. Both wills, it is agreed, even in a case where the agreement between the respective testators is fully proved, are still in their nature revocable; but the doctrine is, that the parties are under a restriction, each to the other, not to revoke their respective wills so as to secure any undue advantage. Bound by the agreement to maintain good faith, each to the other, the conclusion is, that neither can revoke without giving due and seasonable notice. Loffus v. Maw, 32 Law J. Eq. (N. S.) 49; Ridley v. Ridley, 12 Law T. Rep. (N. S.) 481. Few decided cases in point are to be found in judicial reports, and these are nearly equally divided for and against the doctrine, even when it appears that the agreement was fully proved. Walpole v. Orford, 3 Ves. 402; Izard v. Middleton, 1 Desaus. Eq. 116. Judge Story says that a contract to make mutual wills, if one of the parties has died having made a will according to the agreement, will be decreed in equity to be specifically executed by the surviving party, if he has enjoyed the benefit of the will of the other party. 1 Story, Eq. Jur. § 785. If persons enter into a fair and definite agreement to leave each other a sum of money, or to settle by their wills the property of each for the benefit of the survivor, a court of equity, says Roper, will enforce a performance of such agreement. Rop. Leg. 766; 3 Pars. Cont. 406; Logan v. McGinnis, 12 Pa. St. 27; 1 Jarm. Wills, 28; 1 Williams, Ex'rs, 104. These authorities are cited to show that equity only interposes in such cases to enforce the agreement made by the parties. Competent evidence of any such agreement in this case is entirely wanting, and there is nothing on the face of the instruments to warrant any such conclusion. They were executed at different times, and the complainant devises nothing to the said Sylvia Ann. The allegation of the bill is, that the will of the complainant was drawn under the special direction of the aunt, but the averment is denied in the answer, and is wholly unsustained by any competent proof. Reference is also made to the paper called the second page of the will, but there is no proof in the case to show that the writing called the second page was ever attached to the will in question, before the will was signed and executed. Special reference is also made to the circumstances attending the finding of the two envelopes with their enclosures in the trunk of the testatrix after her decease. Satisfactory proofs are exhibited that these envelopes were handed by the complainant to the testatrix in her lifetime, but there is no evidence that the latter had any knowledge whatever of their contents. Subsequent to their being deposited in the trunk, she made and executed her last will and testament, and there is no reason appearing in the record to suppose she even suspected that those envelopes contained anything to show that in so doing she was violating the terms of any such contract as that alleged in the bill of complaint. They were deposited there by a female attendant of the said Sylvia Ann, pursuant to her directions, but at the request and in the presence of the complainant. Deposited in the trunk at her request,

they remained there, for aught that appears to the contrary, till they were found by the complainant under the circumstances detailed in the proof. Inquiry into her motive in causing those papers to be deposited there is unnecessary, as neither the papers themselves nor the circumstances attending their finding afford any evidence to prove the special contract alleged in the bill of complaint. Bill of complaint dismissed with costs.