MUTUAL LIFE INS. CO. OF NEW YORK v. WATSON, Adm'x, and another.

*(Circuit Court, S. D. Georgia, E. D.* February 23, 1887.)

**1. COMPETENCY OF WITNESS—TRANSACTIONS WITH DECEASED PERSON—LIFE INSURANCE—INTERPLEADER—CODE GA. § 3854—REV. ST. U. S. § 858.**

On the trial of a bill of interpleader, between a life insurance company and the administratrix of a deceased policy-holder, and a claimant of the fund due on the policy, under an alleged assignment, the assignee is incompetent to testify to any transactions with the insured in the life-time of the latter, either by the law of Georgia, (Code, § 3854,) or Rev. St. U. S. § 858.[1]

**2. GAMING—"FUTURES"—DELIVERY.**

If, under the guise of a contract to deliver goods at a future day, the real intent be to speculate in the rise or fall of prices, and the goods are not to be delivered, but one party is to pay to the other the difference between the contract price and the market price of the goods at the date fixed for executing the contract, the whole transaction is nothing more than a wager, and is null and void; following *Irwin v. Williar,* 110 U. S. 499, 4 Sup. Ct. Rep. 160.

**3. ASSIGNMENT—CHOSE IN ACTION—WRITING.**

An assignment of a chose in action in Georgia, to be valid, must be in writing.

**4. INTERPLEADER—COSTS—DAMAGES—LIFE INSURANCE—CODE GA. § 2850.**

Where the agents of a life insurance company show active sympathy with one who claims the proceeds of a policy, against the legal representative of the insured, and refuse to pay any part of the same until such claimant is

---

[1] Respecting the admissibility of testimony concerning transactions with deceased persons, see—

Monongahela Nat. Bank v. Jacobus, 3 Sup. Ct. Rep. 219.

Robertson v. Mowell, (Md.) 8 Atl. Rep. 273; Carey v. Fairchild, (Pa.) 9 Atl. Rep. 328; Kisterbock v. Lanning, (Pa.) 7 Atl. Rep. 596; Higgins v. Butler, (Me.) Id. 276; Buck v. Rich, (Me.) 6 Atl. Rep. 871; Jackson v. Payne, (Pa.) Id. 340; Brant v. Dennison, (Pa.) 5 Atl. Rep. 869; Grand United Order Odd Fellows J. S. Ass'n of Baltimore v. Merklin, (Md.) Id. 544; Richardson v. Davis, (Vt.) Id. 287; Palmateer v. Tilton, (N. J.) Id. 105; Warren v. Steer, (Pa.) Id. 4, and note; Heydricks' Appeal, (Pa.) 1 Atl. Rep. 31; Welch v. Adams, (N. H.) Id. 1, and note.

Crawford v. Moore, 28 Fed. Rep. 824; Charlotte v. Soutter, Id. 733.

Union R. & T. Co. v. Shacklet, (Ill.) 10 N. E. Rep. 896; Lerche v. Brasher, (N. Y.) Id. 58; Conklin v. Snider, (N. Y.) 9 N. E. Rep. 880; Louisville, N. A. & C. R. Co. v. Thompson, (Ind.) Id. 357, and 8 N. E. Rep. 18; Treleaven v. Dixon, (Ill.) 9 N. E. Rep. 189; Comer v. Comer, (Ill.) 8 N. E. Rep. 796; McClure v. Otrich, Id. 784; Vigus v. O'Bannon, Id. 778; In re Wilson, (N. Y.) Id. 731; McConnell v. Huntington, (Ind.) Id. 620; Wolfe v. Kable, Id. 559; Barnard v. Barnard, (Ill.) Id. 320; Freeman v. Easley, (Ill.) 7 N. E. Rep. 656; Kelly v. Burroughs, (N. Y.) 6 N. E. Rep. 109; Spencer v. Robbins, (Ind.) 5 N. E. Rep. 726; Ebert v. Gerding, (Ill.) Id. 591; Forgerson v. Smith, (Ind.) 3 N. E. Rep. 866, and note; Corning v. Walker, (N. Y.) Id. 290.

Rhodes v. Pray, (Minn.) 32 N. W. Rep. 86; Pendill v. Neuberger, (Mich.) 31 N. W. Rep. 177; Donnell v. Braden, (Iowa,) 30 N. W. Rep. 777; Harrington v. Samples, (Minn.) Id. 671; Seligman v. Estate of Ten Eyck, (Mich.) 27 N. W. Rep. 514; Belden v. Scott, (Wis.) Id. 356; Barlow v. Buckingham, (Iowa,) 26 N. W. Rep. 58; Cotherman v. Cotherman, (Mich.) 25 N. W. Rep. 467; Samson v. Samson, (Iowa,) Id. 233; Brown v. Bell, (Mich.) 24 N. W. Rep. 824; In re Disbrow's Estate, Id. 624; Crowe v. Colbath, (Wis.) Id. 478, and note.

Roche v. Ware, (Cal.) 12 Pac. Rep. 284.

Brown v. Moore, (S. C.) 2 S. E. Rep. 9; Kennemore v. Kennemore, (S. C.) 1 S. E. Rep. 881; Booth v. McJilton, (Va.) Id. 137, and note; Harper's Adm'r v. McVeigh's Adm'r, Id. 193; Hutzler v. Phillips, (S. C.) Id. 502.

Hill v. Helton, (Ala.) 1 South. Rep. 340; Ellis v. Alford, (Miss.) Id. 155; Harris v. Bank of Jacksonville, (Fla.) Id. 140.

Harris v. Seinsheimer, (Tex.) 3 S. W. Rep. 307; Gilder v. City of Brenham, Id. 309; Worthington v. Miller's Adm'r, (Ky.) Id. 532; Waters v. Davis, (Ky.) 2 S. W. Rep. 695; Park v. Locke, (Ark.) Id. 696; Bates v. Forcht, (Mo.) 1 S. W. Rep. 120; Hays v. Hays, (Tex.) Id. 895.

satisfied, although such claim is for a portion only, it is evidence of bad faith, in the meaning of section 2850 of the Code of Georgia, and the company may be proceeded against for 25 per cent. damages, and counsel fees.

**5. SAME—ASSIGNMENT OF POLICY—STIPULATION.**

And this is especially true where the policy stipulates that "the company will not notice any assignment of its policy until a duplicate or certified copy thereof shall be filed in the company's home office," and where the company admits it has no notice of such assignment, and no such duplicate has been filed.

*(Syllabus by the Court.)*

In Equity. Bill for interpleader.

*Alex. Proudfit*, for plaintiff.

*Hardeman & Davis, Dessau & Bartlett*, and *Garrard & Meldrim*, for defendants.

SPEER, J. This is a bill for interpleader. The averments are that George E. Watson insured his life for the sum of $2,000 with complainants. He died on the twenty-third day of October, 1885. Several years prior to his death, and before his intermarriage with Sallie E. Watson, he indorsed on the policy an assignment in these words:

"I hereby assign my interest in the within policy to J. W. Hinson.
[Signed] "GEO. E. WATSON."

After his death, this policy was found among his effects, and was taken charge of by Sallie E. Watson, who qualified as his administratrix. She made proof of the death of her husband, but the company refused to pay her unless she would agree that the sum of $801.73 should be paid to Hinson, this being the amount to secure which, he insists the assignment was made. Mrs. Watson refused to recognize this claim, or the validity of the assignment, and brought suit for the face value of the policy, 25 per cent. damages, and $200 counsel fees, under section 2850 of the Code of Georgia, relating to refusals by insurance companies to pay their policies when due. Hinson also threatened suit, and notified the company not to pay the policy to Mrs. Watson. The prayers are those usual in bills of interpleader. An order has been passed, permitting the company to pay into court the sum of $2,000, which they admit to be due on the policy, and the actions at law have been enjoined to await the determination of this cause.

The questions to be determined are: *First.* Is the demand of Hinson, and the alleged assignment of the policy to secure the same, valid? Certain oral and written evidence has been introduced, subject to the decision of the court as to its competency, and the testimony of Hinson, taken before the examiner, is offered. This is objected to by Mrs. Watson, and section 858 of the Revised Statutes is cited. It provides:

"In the courts of the United States no witness shall be excluded in any action on account of color, or, in any civil action, because he is a party to or interested in the issue tried; provided that, in actions by or against executors, administrators, or guardians, in which judgment may be rendered for or against them, neither party shall be allowed to testify against the other as to any transaction with, or statement by, the testator, intestate, or ward, unless called to testify thereto by the opposite party, or required to testify thereto by·

the court. In all other respects, the laws of the state in which the court is held shall be the rules of decision as to the competency of witnesses in the courts of the United States in trials at common law, and in equity and admiralty."

The attitude and character of the parties before the court places them within the operation of this rule of evidence. Mrs. Watson is the administratrix of the estate of her deceased husband. J. W. Hinson is pressing for what is equivalent to a judgment against the estate for $801.73, with interest. Manifestly, congress felt that the general rule, permitting parties to testify on their own motion, was disadvantageous to the representatives of deceased persons. *Page* v. *Burnstine,* 102 U. S. 668. The rule is practically the same in Georgia. Code, § 3854. This provides that, "where one of the original parties to the contract or cause of action in issue or on trial is dead, or is shown to the court to be insane, or where an executor or administrator is a party in any suit on a contract of his testator or intestate, the other party shall not be permitted to testify in his own favor." *Flournoy* v. *Wooten,* 71 Ga. 168. He may testify as to facts which do not confront the interests of the dead man's estate where the testimony of the latter, if in life, might protect them. *Gabbet* v. *Sparks,* 60 Ga. 585.

Counsel for Hinson cites *Crawford* v. *Moore,* 28 Fed. Rep. 830, in support of his competency. There the circuit court of the United States, in a suit filed by the *widow* and *minor children* of John Monroe against Moore, permitted the latter to testify as to a rescission of a contract with the deceased husband and father. It will be observed, however, that this was not a suit by "the administrator or executor," in the restricted language of section 858 of the Revised Statutes. They also cite *Potter* v. *National Bank,* 102 U. S. 163. There a witness, who was interested in the issue, but not a party to the record, was permitted to testify to statements of the testator touching the subject-matter in controversy. The supreme court very clearly point out the distinction between that case and this. "A witness may be interested in the issue, without being a party thereto,—a distinction which seems to have been recognized in all the statutes to which reference has been made." Id. 164.

Here Hinson is not only interested, but he is a party. And in *Monongahela Nat. Bank* v. *Jacobus,* 109 U. S. 277, 3 Sup. Ct. Rep. 219, the administrator had been completely eliminated. The liability of his intestate had become fixed by judgment. "The real issue," say the court, "was between the bank and Jacobus;" and they admitted the testimony under the first clause of section 858, and not under the second clause, on which Hinson must base his title to competency. Hinson is, for these reasons, adjudged incompetent to testify to any transaction with Watson, his testimony is not considered, and the validity or invalidity of the assignment has been determined by the rest of the evidence.

It is insisted that all of the written and oral evidence before the court shows that the demand of Hinson against Watson is based upon losses, resulting from buying and selling contracts for future delivery of cotton. This seems undeniable. The accounts rendered and put in evidence,

and the correspondence between the parties, all show this to be true; and it is no longer open to question that transactions of this character are void, and that contracts based thereon cannot be enforced in a court of law. They are nothing more nor less than wagers. *Irwin* v. *Williar*, 110 U. S. 499, 4 Sup. Ct. Rep. 160; *Cunningham* v. *National Bank of Augusta*, 71 Ga. 400. In the latter case, Mr. Justice BLANFORD, for the court, with much felicity, presents the dangerous character of these illegal agreements. "But what," said that learned judge, "is the transaction termed 'futures?' It is this: One person says that I will sell you cotton at a certain time in the future for a certain price. You agree to pay that price; knowing that the person you deal with has no cotton to deliver at the time, but with the understanding that, when the time arrives for delivery, you are to pay him the difference between the market value of that cotton and the price you agreed to pay, if cotton declines, and, if cotton advances, he is to pay you the difference between what you promised to give and the advanced market price. If this is not a speculation on chances,—a wagering and betting between the parties,— then we are unable to understand the transaction. A betting on a game of faro, brag, or poker cannot be more hazardous, dangerous, or uncertain. Indeed, it may be said that these animals are tame, gentle, and submissive, compared to this monster. The law has caged them, and driven them to their dens. They have been outlawed, while this ferocious beast has been allowed to stalk about in open mid-day, with gilded signs and flaming advertisements, to lure the unhappy victim to its embrace of death and destruction. What are some of the consequences of these speculations on 'futures?' The faithful chroniclers of the day have informed us, as growing directly out of these nefarious practices, that there have been bankruptcies, defalcations of public officers, embezzlements, forgeries, larcenies, and death. Certainly no one will contend for one moment that a transaction fraught with such evil consequences is not immoral, illegal, and contrary to public policy."

Hinson urges his demand against the policy, because, he insists, in 1883 Hinson & Blount assigned to him their account against Watson; but in 1882 he had returned the policy with the assignment thereon to Watson. Its possession by the latter and his representative seems never to have been questioned, and possession is *prima facie* evidence of a right to claim the proceeds. May, Ins. 395. Besides, the account of Hinson & Blount against Watson was merely a chose in action, and no proper evidence has been furnished that it has been legally assigned to Hinson. Such an assignment, to have been valid, must have been in writing. *Turk* v. *Cook*, 63 Ga. 681. There the supreme court of Georgia, Chief Justice WARNER delivering the opinion, held that, where partnership assets were divided, and the account against the defendant was taken by the plaintiff in the division, that he took no such interest as would entitle him to maintain a suit thereon, it not having been assigned in writing. This is the construction placed on section 2244 of the Code of Georgia, and is binding on this court. See, also, *Planters' Bank* v. *Prater*, 64 Ga. 613, where the decision just cited was reaffirmed. Therefore Hinson

cannot recover against the insurance company or the administratrix of Watson.

The remaining question is, have the complainants subjected themselves to pay damages to Mrs. Watson for their refusal to pay the amount due on the policy within 60 days after proof of death? The law of Georgia on this subject is found in section 2850 of the Code, which provides:

"The several insurance companies of this state, and foreign insurance companies doing business in this state, in all cases when a loss occurs, and they refuse to pay the same within sixty days after a demand shall have been made by the holder of the policy on which said loss occurred, shall be liable to pay the holder of said policy, in addition to the loss, not more than twenty-five per cent. on the liability of said company for said loss; also all reasonable attorney's fees for the prosecution of the case against said company: provided, it shall be made to appear to the jury trying the same that the refusal of the company to pay said loss was in bad faith."

It is said that the refusal of the company to pay Mrs. Watson was not in bad faith. This will depend upon the consideration of the evidence, and largely upon the consideration of the terms of the policy. It is very evident that Douglass & Johnson, agents of the company, were rather biased toward the claim of Hinson. They did not stand with that rigid perpendicularity which is to be expected of a stakeholder. The following correspondence, which is in proof, will show this to be true.

"EXHIBIT D.

"AGENCY AT SAVANNAH, February 10, 1886.

"*Samuel Walker, Esq., Milledgeville, Ga.*—DEAR SIR: We inclose herewith a receipt sent to us from the above-stated Co. for the amt. due under No. 220,-664, Geo. E. Watson. As you will observe by reading the policy, all such claims are payable at New York, and this will be paid at once when the Co. is placed in the possession of the policy and the inclosed receipt, signed by Mrs. Watson, adm'x, and J. W. Hinson, assignee. You may be assured that until this is done the payment will not be made, and the only delay which has occurred or could have occurred in making the payment has been made by your refusal to comply with the conditions of the policy, and under which over 2,000,000,000 have been paid by this Co.

"Yours, truly, etc.,                    JOHNSON & DOUGLASS.

"EXHIBIT C.

"Received, New York, ———, 188—, from the Mutual Life Insurance Co. of New York, ——— dollars, in full for policy No. ———, and the profits thereon, now terminated by the death of ———.

"Policy, $———.                    JOHN W. HINSON, Assignee.
"Additions, $———.

"EXHIBIT E.

"AGENCY AT SAVANNAH, March 6, 1886.

"*Mess. Hardeman & Davis, Macon, Ga.*—DEAR SIR: We inclose herewith receipt for claim under the Watson policy, already signed by Hinson, assignee. If you will have it signed also by Mrs. Watson, and return it to us with the policy, a draft will be sent by the Co., payable to their joint order, as soon as the receipt and policy reach the Co. The amount found to be due Mr. Hinson will be paid to him, and the balance remitted to you for Mrs. Watson.

"Yours, truly,                    JOHNSON & DOUGLASS."

v.30F.no.9—42

Hinson promptly signed the receipt, as might readily have been expected, under the circumstances. The company was strangely oblivious of the terms of its own policy. No record of any assignment to Hinson, or to any person, was in its home office, or in the hands of its agents. They had assented to no assignment; and yet, by the plain terms of the policy, no assignment without such record and assent was binding on them. The policy contains this clause:

"The company will not notice any assignment of this policy until a duplicate or certified copy thereof shall be filed in the company's home office. The company will not assume any responsibility for the validity of the assignment."

Here notice of the assignment and of the assent of the company was absolutely required, and without these requisites the assignment was invalid. May, Ins. 396; *Stevens v. Warren*, 101 Mass. 565. That able court say:

"The only question to be determined in regard to the rights of the parties is whether the assignment of the policy by the assured in his life-time, without the assent of the insurance company, conveyed any right in law or in equity to the proceeds when due. The court are all of the opinion that it did not."

And the first ground given for this opinion is that it was contrary to the express terms of the policy itself. See, also, for analogy, *Warnock v. Davis*, 104 U. S. 775, citing, with approval, *Stevens v. Warren, supra*.

What foundation, therefore, has the insurance company to stand upon, when it insists that its refusal to pay the widow and administratrix of its dead policy-holder was in good faith? It was in bad faith, not only because of the active sympathy of its agents with an outsider attempting to obtain the fund, but because of the most cursory construction of its contract of insurance, where it pledges the company not to notice such an assignment. I think that this is a proper case for damages, so far as it is developed by the evidence, and it is decreed that the respondent Sallie E. Watson, as the administratrix of her deceased husband, be paid the sum of $2,000, now in the registry of the court, and that she do recover of the complainant all costs incurred by her, and that Hinson be enjoined as prayed for. There being no prayer in the answer or by cross-bill which will justify the court in decreeing damages against the insurance company, it is ordered that the injunction be dismissed, as to the said Sallie E. Watson, administratrix, and that she be allowed to proceed at law for her damages, and counsel fees in this behalf incurred.