## In re JOSEPHSON.

(District Court, S. D. Georgia, W. D.   February 17, 1903.)

1. BANKRUPTCY—LIFE INSURANCE POLICY—ASSETS—EXEMPTIONS.

Where an ordinary life insurance policy of a bankrupt has been pronounced valueless by the trustees in bankruptcy, and turned over to him without an order of the court, and he thereafter, by himself or his wife, pays the premiums thereon for about 15 months, and dies at the expiration of that time, the court will not require that the proceeds of the life policy be paid over to the trustees. The rule might be otherwise with endowment or tontine or other investment policies which have a determinable value.

2. SAME.

By section 70a, cl. 5, Bankr. Act 1898 (30 Stat. 566 [U. S. Comp. St. 1901, p. 3451]), Congress expressed the purpose that after the payment of the cash surrender value of a policy, or, where there is no cash surrender value, the bankrupt may be entitled to hold, own, and carry such policy free from the claims of creditors.

3. SAME—SURRENDER TO BANKRUPT.

Where trustees have recognized that there is no cash surrender value, and have turned over the policy to the bankrupt without an order of court, the court, when that is made to appear, will approve such action nunc pro tunc.

4. WITNESS—COMPETENCY—TRANSACTIONS WITH DECEDENT.

By Bankr. Act 1898, § 21, cl. "a" (30 Stat. 551 [U. S. Comp. St. 1901, p. 3430]), the competency of a witness before the bankruptcy court must be determined by the laws of the state in which the proceedings are pending. By this test, under the law of Georgia (Code, § 5269), the trustees in this case cannot testify to give their personal recollection of transactions or occurrences with the bankrupt on the trial of a suit brought by them against his widow.

(Syllabus by the Court.)

In Bankruptcy. Petition of Rosa Josephson, executrix, for review of referee's finding relative to insurance policies of deceased bankrupt.

John P. Ross and Walter J. Grace, for executrix Rosa Josephson. F. C. Foster and George S. Jones, for trustees.

SPEER, District Judge. The bankruptcy act provides:

"That when any bankrupt shall have any insurance policy which has a cash surrender value payable to himself, his estate, or personal representatives, he may, within thirty days after the cash surrender value has been ascertained and stated to the trustee by the company issuing the same, pay or secure to the trustee the sum so ascertained and stated, and continue to hold, own, and carry such policy free from the claims of the creditors participating in the distribution of his estate under the bankruptcy proceedings, otherwise the policy shall pass to the trustee as assets." Bankr. Act 1898, § 70a, cl. 5 (30 Stat. 566 [U. S. Comp. St. 1901, p. 3451]).

Josephson was a bankrupt. He had two insurance policies. They were ordinary life policies, payable to his legal representatives. It does not appear from the face of the policies that they had a cash surrender value, but, on the contrary, it appears from the testimony of the agent of the insurance company that at the time of bankruptcy these policies were wholly valueless. They were, therefore, not to be regarded as an asset for creditors, and the trustees (it is true, without an order of the court) turned over these policies to Josephson. One of the trustees has testified that the estate was insolvent; that he had

no means of paying the premiums upon the policies; that it would have been onerous, and, in his judgment, unwise, to do so; and the court therefore has the right to conclude that the trustees would not have been justifiable, in any sense, in attempting to hold these policies, and to pay these premiums. If application had been made to the court at the time to ratify the delivery of these policies to Josephson, there is no doubt that the court would have approved it. They were turned over to Josephson, and this action of the trustees is now approved and sanctioned. There had been two appraisements of the values of this estate; and, although they had been placed in the schedules by the bankrupt, in neither appraisement were these policies mentioned. The trustees therefore must have regarded them as worthless. The fact that they were turned over to Josephson raises the strong presumption that they were regarded by the trustees as valueless, and unworthy of consideration as a part of the assets to be distributed to creditors. Thereafter (pending the bankruptcy, it is true) Josephson, or more probably Mrs. Josephson, continued to pay the premiums on these policies, and then Josephson died. After his death it is now discovered that these policies are an asset of the estate, and this proceeding is brought to compel his widow and executrix to pay over the amount recovered on these policies to be distributed to the creditors. The court is not able to agree with the conclusion of the referee that this ought to be done. We think that by a fair construction of this act it was clearly the intention of Congress to exempt, under the conditions stated, the interest which the bankrupt and his family or legal representatives have in his insurance policies, and in a proper way to protect that as against the demands of creditors. That is particularly true with regard to an ordinary life policy of this character, which can have no value at all, except that which is dependent upon the continued payment of premiums by the bankrupt. He may decline to pay premiums, and that would end the matter. If he continues to pay premiums after adjusting the cash surrender value, if there be such value, that being entirely optional with him, he is in that event saving a remnant of his estate, which Congress intends he shall be permitted to do in general furtherance of the policy for which a discharge is granted. If there be no cash surrender value, he is, a fortiori, entitled to keep his life policy. The proceeds of such an insurance policy, especially when it has been redelivered to him by the trustees, on his death should redound not to his creditors, but to his family. The fact that there is no cash surrender value to these policies does not then alter this rule at all. If, however, the trustees will now undertake to show that there is a cash surrender value, the court will permit them to do so, and will, if they succeed in this, require the cash surrender value to be paid out of the proceeds of the policy; otherwise, in the opinion of the court, the whole proceeds must be paid to Mrs. Josephson as executrix.

Upon the hearing before the referee the trustees were permitted to testify that Josephson, when in life, had told them that the policies had lapsed, and were, therefore, valueless, and that on account of this assurance they were surrendered to him. They confess that they made no further inquiry as to this statement, although the office of the agent

of the insurance company was easily accessible. The competency of these witnesses was objected to by the counsel for Mrs. Josephson. The law upon this subject is stated in section 858, Rev. St. [U. S. Comp. St. 1901, p. 659]:

"In the courts of the United States no witness shall be excluded in any civil action because he is a party or interested in the issue tried: provided, that in actions by or against executors, administrators, or guardians, in which judgment may be rendered for or against them, neither party shall be allowed to testify against the other, as to any transaction with, or statement by, the testator, intestate, or ward, unless called to testify thereto by the opposite party, or required to testify thereto by the court. In all other respects, the laws of the state in which the court is held shall be the rules of decision as to the competency of witnesses in the courts of the United States in trials at common law, and in equity and admiralty."

In Mutual Life Insurance Company of New York against Watson, administratrix, and another, decided in this district in 1887, and reported in 30 Fed. 653, the rule is announced that:

"In a trial between a life insurance company, the administratrix of a deceased policy holder, and a claimant of the fund due on the policy under an alleged assignment, the assignee is incompetent to testify to any transactions with the insured in the lifetime of the latter, either by the law of Georgia (Code, § 3854) or Rev. St. U. S. § 858" [U. S. Comp. St. 1901, p. 659], above cited.

That case was extensively annotated by the editor of the valuable publication in which it appears. It is true that the witness held to be incompetent there was not an assignee in bankruptcy, and the Supreme Court of the United States, in the case of Hobbs v. McLean, 117 U. S. 579, 6 Sup. Ct. 870, 29 L. Ed. 940, held that section 858, Rev. St., did not apply to suits by or against assignees in bankruptcy under the act of 1867. It is, however, true that in that case the court seemed of the opinion, under the circumstances, that the privilege of persons otherwise incompetent to testify in a suit brought by or against an assignee was anomalous and improper. "We cannot," said Justice Woods for the court, "insert the exception. When a provision is left out of a statute either by design or mistake of the Legislature, the courts have no power to supply it. * * * Mr. Justice Story, in Smith v. Rines, 2 Sumn. 338, Fed. Cas. No. 13,100, observed 'it is not for courts of justice proprio marte to provide for all the defects or mischiefs of imperfect legislation.'" There is, indeed, no reason in principle why an assignee or trustee in bankruptcy should not stand upon the same plane, as to competency, as witnesses, upon issues of this character with any other legal representatives of an estate. The trustee has a pecuniary interest in suits like that before the court. He has an additional interest in the successful conduct of his trust, always largely estimated by the amount gathered in for the benefit of creditors. He is not less interested, therefore, than an executor or administrator.

The Bankruptcy Act of 1898, § 21, cl. "a" (30 Stat. 551 [U. S. Comp. St. 1901, p. 3430]), seems to have supplied the exception indicated as proper by the decision of the Supreme Court in Hobbs v. McLean. This reads:

"A court of bankruptcy may, upon application of any officer, bankrupt, or creditor, by order require any designated person including the bankrupt, who is a competent witness under the laws of the state in which the proceedings

are pending, to appear in court or before a referee or judge of any state court, to be examined concerning the acts, conduct, or property of a bankrupt whose estate is in process of administration under this act."

It seems, therefore, that the test of competency of witnesses before a court of bankruptcy is the test afforded by the law of the state in which the case is pending. It is equally clear that under the statute of Georgia (Code, § 5269) the trustees in this case could not be heard in their suit against his widow to give their personal recollection of transactions or occurrences with the bankrupt. The argument of counsel for the trustees that the witnesses were competent because they were called upon to testify by the court is not maintainable. They were called by the attorney, as any other witness. There was no special order by the referee. This provision of section 858 was inserted to provide for extreme and special cases which might arise, in which it would be a great hardship not to take such order. It is for the court to suggest that a party be called under such special circumstances. Eslava v. Mazange's Adm'r, 1 Woods, 628, Fed. Cas. No. 4,527. The court will not require a person to testify where the state law forbids it. Robinson v. Mandell, 3 Cliff. 169, Fed. Cas. No. 11,959.

However, the testimony of the trustees, even if competent witnesses, is not regarded as controlling. After the lapse of 15 months, and after the death of Josephson, it does not matter what the trustees may recall that he said upon this subject. The policies would not have been more valuable to the estate, unless, indeed, Josephson had died, and the policies had matured before the next premium was due and payable. There is no provision of the bankruptcy act which authorizes the trustees to pay premiums on ordinary life policies from the funds in their hands; otherwise such policies would usually constitute a liability of the estate, rather than an asset. This may be different with endowment or tontine policies, which have a determinable value. These are not strictly life insurance policies, but are also investments, and may, therefore, be assets. The trustees, therefore, were quite right in regarding these policies as not an asset, and, since Josephson had the right to demand it, their delivery to him was altogether appropriate.

The unexpected maturity of the policies by which his widow is enabled to secure from the wreck of his fortunes a pittance for herself and her child is not regarded by the court as a favorable occasion for resuscitation of the long dormant activities of these trustees, and for the deprivation of the wife and child of that slender provision for their support, the contemplation of which may have afforded solace to the last moments of the unfortunate husband and father.

Order will be taken accordingly.