### CLEMENTS *et al.* v. JONES *et al.*

1. Mutual wills are those which contain reciprocal provisions, giving the separate property of each testator to the other.
   (*a*) These wills are specifically recognized by our law, and "may be made either separately or jointly, and in such case the revocation of **one** is the destruction of the other."
   (*b*) Mutual wills, even with a covenant against revocation, can still be revoked.
2. The general rule is, that if two persons execute wills at the same time, either by one or two instruments, making reciprocal dispositions in favor of each other, the mere execution of such wills does not impose such a legal obligation as will prevent revocation.
   (*a*) Agreements to make wills are not established merely because two persons simultaneously make reciprocal testamentary dispositions in favor of each other, when the language of such wills contains nothing to the effect that the instruments are the result of a contract.
   (*b*) Where mutual wills are the result of a contract based upon a valid consideration, and where after the death of one of the parties the survivor has accepted benefits under the will of the other which was executed pursuant to an agreement, equity will, where the facts are fully proved, interpose to prevent fraud, and will compel the execution of such agreement by the survivor.

(c) To enable one to invoke the intervention of equity, it is not suffi-
cient that there are wills simultaneously made, and similar in their
reciprocal provisions; but the existence of a clear and definite contract
must be alleged and proved,' either by evidence of an express agreement,
or by unequivocal circumstances.

3. To justify specific execution of an agreement for the execution of mutual
wills, its terms and conditions must be clear and certain, and must be
precisely stated and alleged.

(a) Whether the contract is such as is provable by parol, or is required
by the statute of frauds to be in writing, it must be certain and un-
equivocal in all its essential terms, either within itself or by reference
to some other agreement or matter, or it can not be specifically per-
formed.

(b) The petition in this case does not allege such an agreement.

No. 6631. AUGUST 16, 1928.

Equitable petition. Before Judge Humphries. Fulton superior
court. May 15, 1928.

Lola A. Clements, Ada F. Noyes, R. L. Walker, W. P. Walker,
Walter R. Jones, Wesley E. Jones, J. M. Walker, W. B. Walker,
Mrs. S. B. Stokely, and Charlie Beardsley filed their petition in
Fulton superior court against Ola T. Jones, making the following
allegations: (1) The defendant is a resident of the county of
Fulton. (2) Petitioners are the next of kin and heirs at law of
Jean Walker, alias C. W. Jones, late of said county, deceased, a
maternal nephew of the first five named petitioners, and a paternal
nephew of Walter R. and Wesley E. Jones. Mrs. S. B. Stokely
and Charlie Beardsley are the heirs at law of Mittie Jones Beards-
ley, the paternal aunt of said Walker. (3) On January 17, 1920,
Jean Walker executed his will in which he devised to the defend-
ant certain described lands in Fulton County, a house and lot at
Stone Mountain, Georgia, and he bequeathed to her all his right,
title, and interest in certain stock in a grain elevator at Cairo, Geor-
gia, all money in the Fourth National Bank of Atlanta in the
name of C. W. Jones & Company, and all his diamonds, notes, ac-
counts, and choses in action. The defendant is the nominated
executrix of said will. At the same time, Jean Walker, for a con-
sideration of $1 and natural love and affection, conveyed to the de-
fendant by warranty deed certain other described valuable real
estate in the County of Fulton. Said will and deed gave to the de-
fendant practically all of the estate of which Walker was seized
and possessed at the time. Copies of both instruments are at-
tached to the petition as exhibits. (4) On the same day, and be-

fore the same attesting witnesses, the defendant executed her will in which she bequeathed and devised to Jean Walker certain described real estate in the County of Fulton, certain jewelry, all of her interest in money in the Fourth National Bank of Atlanta, in the name of C. W. Jones & Company, and all her notes, accounts, and choses in action. Jean Walker is named executor of said will, and a copy thereof is attached to the petition as an exhibit. (5) Jean Walker was a son of C. C. and Pinkey Walker Jones, and the defendant was the second wife of C. C. Jones. Jean Walker was only a stepson of the defendant, and a stranger by blood. (6) The will and deed executed by Jean Walker and the will of the defendant "were mutual instruments, and were signed, sealed, and published as part of a general scheme between the said Ola Jones and the said Jean Walker, . . and the will and conveyance of the said Jean Walker had as its consideration the execution and publication of the will of the defendant to" him. (7) Petitioners are informed and believe that the account referred to in both of said wills as the "C. W. Jones account" and carried in the Fourth National Bank of Atlanta, was an alleged account of the Walker and defendant. The name purports a partnership. The business conducted by Walker and defendant was illegal, and defendant was fully aware of its nature. She has claimed and is now claiming the entire proceeds of said account. (8) Jean Walker died on September 27, 1925, it being claimed that while driving an automobile the same overturned, killing him. An examination of his body, however, disclosed, as petitioners are informed, only two wounds, one on his hand, which was a scratch, and the other on the back of his head, which caused his death. So far as petitioners are informed, there were no other wounds or cuts on his body. They are informed that at the time of his death Walker was engaged in operating this automobile in furtherance of the business of C. W. Jones & Company, of which the defendant was a member. That business was the sale of intoxicating liquors, commonly known as "bootlegging."

(9) Defendant has offered the will of Jean Walker for probate in solemn form in the court of ordinary, and citation has issued requiring petitioners to show cause why said will should not be probated. (10) Such probate will vest in the defendant the fee-simple and unconditional title to the property therein men-

tioned. (11) Petitioners are informed and believe that the defendant advised Jean Walker that the husband of a certain woman was likely to sue him for alienating his wife's affection, and, if he did, then as the result of said suit and judgment Walker would lose his property; and that such statement was a fraud upon Walker, no such suit ever having been brought, and the same was used as a threat for the purposes aforesaid. (12) Since the death of Walker the defendant has declared her intention to disregard the contract made between her and him and not to comply with the terms and conditions of the will she made, which was made in consideration of the deed and will which Walker made to her, and she now threatens to destroy and revoke her will in which the said Walker is the chief beneficiary, and to ignore and repudiate the contract of which the execution of said will was a part, which was the consideration of each for the other. (13) Petitioners believe and charge, by reason of the feeling between the defendant and them, that the defendant made the threat in good faith, and that it is her fixed intention, upon the probate of the will of Walker, to destroy and revoke her will made in consideration thereof. (14) Petitioners charge, upon information and belief, that it is the purpose of the defendant to convert all the property she now owns, as well as the property of Walker conveyed to her by his deed and will, into cash or its equivalent, to revoke her will, and to dispose of her holdings otherwise and to other persons than petitioners and the heirs at law of Walker. (15) Said purpose and intention is a fraud upon the rights and interests of petitioners and the heirs at law of said Walker; and unless this court intervenes and restrains said threatened action, petitioners will suffer irreparable injury and damage. (16) They have no adequate remedy at law. (17) With the exception of the value of the realty devised and conveyed to the defendant by the will and deed of Walker, defendant is insolvent. (18) Petitioners show that defendant has been appointed executrix of the will of Walker, but it is not to be presumed that she will initiate any action to set aside a conveyance of the property described in the deed from Walker to her. Petitioners pray that defendant be enjoined from conveying or in anywise attempting to convey the property bequeathed to her in the will of Walker; that the deed from Walker to defendant be canceled; for decree impressing a trust upon the property bequeathed by defendant to

Walker, so that it shall be held in trust for petitioners, and that at the death of the defendant petitioners may recover it; and for general relief.

The defendant demurred to the petition upon the grounds that it set forth no cause of action, and that petitioners were not entitled to the equitable relief sought. She demurred specially to paragraphs 2, 3, 4, 5, 6, 7, 8, 11, 12, 13, and 14 of the petition, upon the ground that they are immaterial and irrelevant; and to paragraphs 15 and 16, upon the ground that they set forth mere conclusions of the pleader, without any basis of fact on which to found them. The court sustained the special demurrer to paragraphs 6, 7, 8, 11, 12, and 13, and overruled it as to the other paragraphs. The court then sustained the general demurrer and dismissed the petition, holding that "While the wills appear to have been executed on the same day, nothing appears in either to indicate that they were executed in pursuance of a contract, and not as voluntary wills." The plaintiffs excepted.

*C. N. Davie, O. A. Park,* and *J. F. Kemp,* for plaintiffs.

*Hewlett & Dennis* and *E. M. Hiscock,* for defendants.

HINES, J. · (After stating the foregoing facts.)

1. Mutual wills are those which contain reciprocal provisions, giving the separate property of each testator to the other. 28 R. C. L. 166, § 122; 1 Schouler on Wills (6th ed.), § 716; Walker *v.* Walker, 14 Ohio St. 157 (82 Am. D. 474); Carle *v.* Miles, 89 Kan. 540 (132 Pac. 146, Ann. Cas. 1915A, 363); *Bright* v. *Cox,* 147 *Ga.* 474 (94 S. E. 572). These wills are specifically recognized by our law. They "may be made either separately or jointly, and in such case the revocation of one is the destruction of the other." Civil Code, § 3830. Mutual wills, with a covenant against revocation, can still be revoked. Civil Code, § 3916. It follows that such wills in this State are legal.

2. The general rule is, although not undisputed, that if two persons execute wills at the same time, either in one or two instruments, making reciprocal dispositions in favor of each other, the mere execution of such wills does not impose such a legal obligation as will prevent revocation. By the weight of authority agreements to make wills are not established merely because two persons make some reciprocal testamentary dispositions in favor of each other, the language of such wills containing nothing to the

effect that the instruments are the result of a contract. The case is different, however, where the mutual wills are the result of a contract based upon a valid consideration, and where, after the death of one of the parties, the survivor has accepted benefits under the will of the other which was executed pursuant to an agreement. In such cases, where all the facts are fully proved, equity will interpose to prevent fraud. This can be accomplished only through a court of equity, as the probate court has no jurisdiction to enforce such agreement. Equity, however, can deal only with the agreement, and can only interpose to prevent fraud arising from the breach of such agreement by one who has received benefits thereunder. 1 Alexander on Wills, § 85 et seq. However, to enable one to invoke the intervention of equity, it is not sufficient that there are wills simultaneously made, and similar in their reciprocal provisions, but the existence of a clear and definite contract must be alleged and proved, either by proof of an express agreement, or by unequivocal circumstances. Edson v. Parsons, 155 N. Y. 555 (50 N. E. 265); Wilson v. Gordon, 73 S. C. 155 (53 S. E. 79); *Evans v. Smith,* 28 *Ga.* 98 (73 Am. D. 751); Turnipseed v. Sirrine, 57 S. C. 559 (39 S. E. 757, 76 Am. St. R. 580); Carmichael v. Carmichael, 72 Mich. 76 (1 L. R. A. 596, 16 Am. St. R. 528, 40 N. W. 173); McGuire v. McGuire, 11 Bush (74 Ky.) 142; Sumner v. Crane, 155 Mass. 483 (15 L. R. A. 447, 29 N. E. 1151); Robinson v. Mandell, 3 Cliff. 169, Fed. Cas. No. 11959; Buchanan v. Anderson, 70 S. C. 454 (50 S. E. 12); Brown v. Webster, 90 Neb. 591 (134 N. W. 185, 37 L. R. A. (N. S.) 1196); Cawley's Appeal, 136 Pa. 628 (10 L. R. A. 93, 20 Atl. 567); 40 Cyc. 2118 c; 2 Story's Equity Jurisprudence, § 785; Burke's Estate, 66 Ore. 252 (134 Pac. 11); Robertson v. Robertson, 94 Miss. 645 (136 Am. St. R. 589, 47 So. 675); Morgan v. Sanborn, 225 N. Y. 454 (122 N. E. 696); Rastetter v. Hoenninger, 142 N. Y. S. 962; Stevens v. Myers, 91 Ore. 114 (177 Pac. 37, 2 A. L. R. 1155); Baker v. Syfritt, 147 Iowa, 49 (125 N. W. 998); Meador v. Manlove, 97 Kan. 706 (156 Pac. 731); Deseumeur v. Rondel, 76 N. J. Eq. 394 (74 Atl. 703); Wanger v. Marr, 257 Mo. 497 (165 S. W. 1032); Phillip v. Phillip, 160 N. Y. S. 624 (96 Misc. 471); Frazier v. Patterson, 243 Ill. 80 (90 N. E. 216) 17 Ann. Cas. 1003; Everdell v. Hill, 58 App. Div. 151 (68 N. Y. S. 719); Doyle v. Fischer, 183 Wis. 599 (198 N. W. 763, 33 A. L. R. 733);

Larrabee *v.* Porter (Tex. Civ. App.), 166 S. W. 395; Tooker *v.* Vreeland, 92 N. J. Eq. 340 (112 A. 665); Brown *v.* Johanson, 69 Colo. 400 (194 Pac. 943); Menke *v.* Duwe, 117 Kan. 207 (230 Pac. 1065); Mullen *v.* Johnson, 157 Ala. 262 (47 So. 584); Allen *v.* Bromberg, 163 Ala. 620 (50 So. 884); Coveney *v.* Conlin, 20 App. D. C. 303; Klussman *v.* Wessling, 238 Ill. 568 (87 N. E. 544); Phillips *v.* Murphy, 186 Ky. 763 (218 S. W. 250); Gould *v.* Mansfield, 103 Mass. 408 (4 Am. R. 573); Dicks *v.* Cassels, 100 S. C. 341 (84 S. E. 878); Weir's Estate, 134 Wash. 560 (236 Pac. 285); 1 Schouler on Wills (6th ed.), § 721; Hale *v.* Hale, 90 Va. 728 (19 S. E. 739); Canada *v.* Ihmsen, 33 Wyo. 439 (240 Pac. 927); Campbell *v.* Dunkelberger, 172 Iowa, 385 (153 N. W. 56).

From an analysis of the above and other cases upon this subject these principles are deducible: (1) The general rule is that the execution of a joint will is not of itself sufficient evidence of an enforceable contract to devise between the testators, so as to make the contract enforceable in equity. (2) But the terms of a joint will, or the circumstances under which it was executed, may show the existence of a contract directly or by inference, so ·that equity will enforce its provisions in a proper case. (3) It is generally held that the fact that separate wills, with reciprocal provisions, have been executed by two persons simultaneously, or about the same time, is not of itself evidence of a contract between the testators, but such a contract may appear from the terms of the will, by direct reference or by inference. (4) The execution of mutual wills alone is not sufficient to satisfy the statute of frauds requiring contracts to devise real estate to be in writing.

3. Does the petition set out an agreement for the making of these wills which a court of equity will enforce by decree for its specific performance? To justify specific execution of a parol agreement for the making of mutual wills, its terms and conditions should be precisely stated. If the contract which it is sought to have performed is vague and uncertain, equity will not enforce it. *Miller* v. *Cotten,* 5 *Ga.* 341 (4). In order to have specific performance, the complainant must allege a clear case, and the contract he sets up must be specific. Where the allegations of the petition are uncertain, or confused, or contradictory, the bill is demurrable. *Prater* v. *Sears,* 77 *Ga.* 28 (2*b*). Whether the contract is such as is provable by parol, or is required by the statute of frauds

to be in writing, it must be certain and unequivocal in all its essential terms, either within itself, or by reference to some other agreement or matter, or it can not be specifically performed. *Dowling* v. *Doyle,* 149 *Ga.* 727 (2*a*) (102 S. E. 27). In a proceeding for specific performance it must appear, not only that the contract has not been performed, but what is the contract ·to be performed. *Dowling* v. *Doyle,* supra; Fry on Specific Performance (6th ed.), § 380. The terms of the agreement, whether oral or in writing, must be clear and definite. Otherwise, specific performance will be denied.

Taking the petition most strongly against the petitioners, as we are bound to do in construing pleadings, we do not think that it sets forth an agreement between the testators for the execution of mutual wills, which a court of equity can enforce by decree for specific performance. Petitioners, in paragraphs 3 and 4 of their petition, allege that Jean Walker and the defendant simultaneously executed their wills, in which they made reciprocal provisions for each other, and that the instruments were attested by the same witnesses. We have seen that the simultaneous execution of wills by two persons with reciprocal provisions in favor of each other, the language of such wills containing nothing to the effect that they were executed as the result of a contract, does not establish an agreement on the part of the testators to make mutual wills. The allegation in the sixth paragraph of the petition that the will and deed executed by Walker, and the will executed by the defendant, "were mutual instruments and were signed, sealed, and published as part of a general scheme between" the defendant and Walker, and that "the will and conveyance of the said· . . Walker had as its consideration the execution and publication of the will of the defendant," likewise does not establish an agreement between these parties to execute mutual wills. Mutual wills may be made in pursuance of a general scheme between two makers of such instruments, and the execution of the will and conveyance of one of them may have as its consideration the execution of the will of the other; and yet such general scheme, and such consideration for instruments executed in pursuance thereof, do not constitute a specific agreement to make mutual wills, upon a valuable consideration, which a court of equity will enforce. Mutual wills may be executed, and yet courts of equity will not treat them as agree-

ments upon sufficient consideration, and require the agreements to be specifically performed. Courts of equity will only specifically enforce agreements ·to execute mutual wills, based upon mutual considerations. The fact that the will and conveyance of Walker had as its consideration the execution and publication of the will of the defendant is not sufficient to show that the execution of the will of the defendant was based upon a sufficient consideration. To make an agreement to execute these instruments valid, it must be based upon a mutual consideration which moves both parties to execute their separate wills. The further allegation, in the twelfth paragraph of the petition, that the defendant had declared her intention to disregard the contract made between her and the said Walker, and that she does not intend to comply with the terms of her will, "which petitioners allege was made in consideration of the deed and will which the said Walker made to the defendant," when considered with the other allegations above referred to, does not establish a specific agreement between the parties to make mutual wills, which is requisite in order for equity to enforce the agreement by a decree for specific performance. This allegation and the other allegations above referred to are consistent with the execution of mutual wills not made in pursuance of a specific agreement to make them. Construing the petition most strongly against petitioners, they seek to deduce from the simultaneous execution of these separate instruments, with reciprocal provisions in behalf of each of the makers, and from the fact that the execution of each instrument would be a valid consideration for the execution of the other, a specific agreement by which these parties bound themselves to execute these instruments. This deduction is a conclusion which the facts alleged do not warrant. These allegations of the petition do not show a clear and definite agreement between the makers of these instruments to execute the same, and that the same were made upon a valuable consideration moving to each of these makers. In view of the fact that our Code specifically provides that mutual wills may be revoked, a court of equity will not hold them irrevocable upon the ground that they were made in pursuance of an agreement, unless such agreement is clear and definite. Unless the petition for specific performance sets up such clear and definite agreement, it is demurrable. It follows that the trial judge properly sustained the general demurrer to the petition, for the reason

that it does not set forth any clear and definite agreement, based upon a sufficient consideration, by which the makers of these wills obligated themselves to execute the same.

4. The petition does not make a case for cancellation of the deed from Walker to the defendant, upon the ground that it was obtained by the grantee through fraud. If Walker executed this deed to defeat the claim of a husband for damages growing out of the alienation of his wife's affection by Walker, his deed would be void as to the husband so sought to be defrauded. Civil Code, § 3224; *Westmoreland* v. *Powell,* 59 *Ga.* 256. Such a deed will nevertheless be good as between the parties. The maker is clearly estopped from calling in question the legality of the conveyance. Where a debtor, for the purpose of defeating an existing creditor, conveys his land to another, the transaction, as between these two, is valid; and a court of equity will not cancel such deed at the instance of the fraudulent debtor. *Jones* v. *Dougherty,* 10 *Ga.* 273 (5) ; *Tufts* v. *DuBignon,* 61 *Ga.* 322 (5). The fact that the grantor was induced by a fraudulent statement of the grantee to execute such deed does not furnish any ground for its cancellation. The deed having been made by the grantor to the grantee to defraud a creditor, or a supposed creditor, of the grantor, both the grantor and the grantee are in pari delicto; and a court of equity will leave them where it finds them. The fact that the deed of the grantor was induced by a fraud perpetrated upon him by the grantee will not give him a standing in a court of equity.

5. The above rulings render it unnecessary to discuss and decide other questions raised in the record.

<em>Judgment affirmed. All the Justices concur.</em>