S99A1294. DYER et al. v. SOUTHER.
(528 SE2d 242)

HINES, Justice.

This is an appeal by the defendant caveators in a contest over the validity of the last will and testament of Blanch Dyer, who died in 1994. The case was tried before a jury and at the close of the evidence, the superior court directed verdicts in favor of the plaintiff

propounder on the caveators' claims that the will was not properly signed and executed on January 12, 1987, and that it was the product of undue influence. The court did not direct a verdict on the question of testamentary capacity and it was submitted to the jury. The jury returned a verdict in favor of the propounder, finding that the document at issue was the last will and testament of Blanch Dyer. However, we reverse the judgment entered on the jury's verdict because the superior court erred in directing a verdict on the issue of undue influence.[1]

Ms. Dyer was the last of 11 children and never married. She died at age 74 and was survived by numerous nieces and nephews, and over 70 great nieces and nephews. She lived at the Dyer homeplace where she was born, and which she had inherited. Under the will at issue, Ms. Dyer bequeathed and devised all of her property to the propounder Souther, a great nephew.[2] Souther was also named as executor. In the event that Souther did not survive Ms. Dyer, the property was to go to Souther's mother, who was not a blood relative of Ms. Dyer. Ms. Dyer's nieces and nephews, collectively "Dyer," filed the caveat to the will.

1. It was not error to deny the caveators' pretrial "Motion for Reassignment to a Superior Court Judge Outside the Judicial Circuit." The motion was not accompanied by the required evidence by affidavit setting forth the facts upon which the motion was founded. Uniform Superior Court Rule 25.

2. In order for a will to be valid, it must be freely and voluntarily executed, and anything which destroys the freedom of volition, such as undue influence, causes the will to be invalid. *Stephens v. Brady*, 209 Ga. 428, 432 (2) (73 SE2d 182) (1952). Undue influence to procure a will may take many forms and may operate through diverse channels. Id. Moreover, the existence and effective power of undue influence can rarely be shown except by circumstantial evidence. *Skelton v. Skelton*, 251 Ga. 631, 634 (5) (308 SE2d 838) (1983). Thus,

[a]n attack on a will as having been obtained by undue influence may be supported by a wide range of testimony, . . . [including evidence of] a confidential relation between the

---

[1] The trial court, outside the jury's presence, orally granted the propounder's motions for directed verdicts on the caveators' claims of improper execution and undue influence. The verdicts were not reduced to written judgments, and the only final judgment entered adopted the jury's verdict that the document at issue was the last will and testament of Blanch Dyer.

[2] Even though the will states that Souther is to have "all of my property," Item Four provides that all bonds, stocks, bank accounts, savings accounts, money market accounts or certificates of deposit, savings and loan accounts and similar property that Ms. Dyer might own at the time of her death in her name and/or any other person which are payable to such person are to be the sole property of such person.

parties, the reasonableness or unreasonableness of the disposition of the testator's estate, old age, or disease affecting the strength of the mind, tending to support any other direct testimony or any other proved fact or circumstance going to show the exercise of undue influence on the mind and will of the testator. . . . While the quantity of influence varies with the circumstances of each case, according to the relations existing between the parties and the strength or weakness of mind of the testator, the amount of influence necessary to dominate a mind impaired by age or disease may be decidedly less than that required to control a strong mind. [Cits.]

*Skelton v. Skelton*, supra at 634 (5), quoting *Fowler v. Fowler*, 197 Ga. 53 (2) (28 SE2d 458) (1943); *Perkins v. Edwards*, 228 Ga. 470, 475 (186 SE2d 109) (1971). What is more, the question of undue influence is generally for the factfinder. *Mathis v. Hammond*, 268 Ga. 158, 160 (3) (486 SE2d 356) (1997). And a directed verdict is authorized only when "there is no conflict in the evidence as to any material issue and the evidence introduced, with all reasonable deductions therefrom, shall demand a particular verdict." OCGA § 9-11-50 (a); *Scoggins v. Strickland*, 265 Ga. 417, 418 (2) (456 SE2d 208) (1995).

There was circumstantial evidence sufficient to raise the issue of undue influence. It was shown, among other things, that propounder Souther's property was close to the Dyer homeplace and around the time of making the will, Souther was regularly at the homeplace; Souther rented farm property from Ms. Dyer, and in the summer of 1986, Ms. Dyer complained to a relative that Souther had not paid her anything for having his cows on the land; shortly before making the will Ms. Dyer commented to a niece that she would never make a will, there was "no way" that Souther was going to get everything, and that Souther would be "getting nothing"; around Christmas 1986, she told a nephew that "they're after me" and "they're trying to get me to make a will"; Souther made Ms. Dyer's appointment with the attorney about the will; subsequent to execution of the will, Ms. Dyer lived with Souther's mother prior to Ms. Dyer entering a nursing home; Ms. Dyer executed a power of attorney in favor of Souther and Souther drove her to the attorney's office in order to accomplish it; Ms. Dyer put certificates of deposit jointly in Souther's name and, in 1989, approximately five years prior to her death, Souther cashed all of them in on the same day; Souther received approximately $167,800 in payments from Medicaid, private insurance benefits, and Ms. Dyer's funds, but Souther was able to document only $97,000 actually used for Ms. Dyer's expenses. The caveators also presented evidence of Ms. Dyer's mental impairment and degree of dementia around the time of the will: she appeared confused, exhibited atypical behavior, and seemed to be "not the same person." Also Ms. Dyer

could not read or write, nor could she fill out a check or order household items.

Essentially, in this case the trial court weighed the evidence regarding undue influence and found that, in its opinion, it was wanting. But the question is whether the jury could have found undue influence from the evidence presented. The evidence of Ms. Dyer's degree of infirmity and impairment and other circumstances at the time of making the will coupled with the disproportionate nature of the testamentary distribution belies the finding that the evidence demanded a verdict in favor of the propounder on the claim of undue influence. Accordingly, the trial court erred in refusing to permit the issue to be resolved by the jury. OCGA § 9-11-50; *Scoggins v. Strickland,* supra at 418 (2).

3. However, the trial court did not err in directing a verdict in favor of the propounder on the caveators' claim of improper execution. The caveators contend that there would have been sufficient evidence to submit the issue of the propriety of the will's execution to the jury had the trial court not erroneously excluded evidence tending to establish that the will was not executed on the purported date and which bore upon the credibility of the attorney who drafted the will. But, that is not so. Even if the cited evidence had been admitted, it was insufficient to raise a conflict in the evidence as to the issue of proper execution. OCGA § 9-11-50; *Scoggins v. Strickland,* supra at 418 (2). The evidence demanded the finding that the document at issue was properly executed on January 12, 1987. See *In re Estate of Edith Brown Brannon,* 264 Ga. 84 (441 SE2d 248) (1994); *Thornton v. Hulme,* 218 Ga. 480 (128 SE2d 744) (1962).

4. As to the challenge to Ms. Dyer's testamentary capacity, the question on appeal is whether there was sufficient evidence to sustain the jury's verdict in favor of capacity. See *Horton v. Horton,* 268 Ga. 846, 847 (1) (492 SE2d 872) (1997). And the evidence was sufficient in this case. Moreover, there was no reversible error by the trial court in regard to this issue.

5. The caveators complain that the trial court erroneously excluded evidence of the source and value of the Dyer homeplace. In a will contest such as this, evidence of value relating to the reasonableness of the disposition and how the property came into the decedent's possession may be relevant and material. *Worrell v. Ganns,* 214 Ga. 708, 709 (3) (107 SE2d 186) (1959). *Holland v. Bell,* 148 Ga. 277, 278 (1) (96 SE 419) (1918). So too, will be any evidence which "relate[s] to the questions being tried by the jury and bear[s] upon them either directly or indirectly." OCGA § 24-2-1; *Allen v. Lefkoff, Duncan, Grimes & Dermer, P.C.,* 265 Ga. 374, 376 (2) (b) (453 SE2d 719) (1995). Thus, the admissibility of the cited evidence on retrial on the claim of undue influence will depend on the caveators' showing that the evidence is relevant and material.

*Judgment reversed. All the Justices concur, except Benham, C. J., who dissents.*

DECIDED MARCH 27, 2000.

*Beltran & Associates, Frank J. Beltran, Charlotte K. Perrell*, for appellants.

*Carey, Jarrard & Walker, Jack M. Carey*, for appellee.