## S01A1638. LONG v. WAGGONER et al.
### (558 SE2d 380)

SEARS, Presiding Justice.

Appellant Paul Long appeals the trial court's grant of summary judgment to appellee Sherry Waggoner, claiming that the trial court erred in overlooking issues of disputed material fact concerning appellee's alleged undue influence over a grantor of real property. Appellant also argues that the trial court erred in ruling that an earlier will of the grantor, which appellant claims prohibited the property transfer, was joint rather than mutual and hence subject to revocation. Having reviewed the record, we conclude that appellant's claims of undue influence are based upon speculation, and that there is no disputed evidence of material fact that should have forestalled the trial court's grant of summary judgment to appellee regarding that particular issue. Moreover, we conclude that the evidence of record clearly shows that the will at issue was not mutual, and hence could be revoked by the testator in order to avoid any conflict with the land transfer. Therefore, we affirm.

Appellant Long ("son") is the only son of Virgil and Vera Long. Appellee Waggoner ("granddaughter") is appellant's daughter, and the granddaughter of Virgil and Vera Long. Between 1986 and 1989, Virgil and Vera Long gave their granddaughter Waggoner approximately one acre of land and some cash to build a home next door to their own home. Virgil and Vera Long also gave their son Long a home, cash, and a large parcel of property near their own home.

In 1992, while sick with pancreatic cancer, Virgil Long executed a power of attorney appointing his granddaughter as his attorney-in-fact. In the following year, Virgil and Vera Long executed a single will, which stated that they intended for all of their property to pass to their surviving spouse in trust, with their son serving as trustee. Upon the surviving spouse's death, the trust would be dissolved and the property would pass to Virgil and Vera Long's son. After executing their will, Virgil and Vera Long made substantial cash gifts to their son and to each of their three granddaughters, including appellee.[1] Shortly thereafter, Virgil Long died. Under the 1993 will, Virgil

---

[1] Virgil and Vera Long made cash gifts of $190,000 to their son, and $127,000 to each of their three granddaughters, including appellee.

Long's property passed to the Virgil Long Trust for Vera Long's benefit.

Several months later, Vera Long wrote a directive to her attorney, stating her intention to: (1) transfer her undivided one-half interest in an 80 acre tract of pasture land she owned together with the Virgil Long Trust to her granddaughter in her individual capacity; (2) void her 1993 will with Virgil Long; and (3) prepare a new will leaving her individual property to her three granddaughters and excluding her son. Thereafter, Vera Long was examined by her personal physician and found to be in good mental health. On the same day as the examination, Vera Long transferred her undivided one-half interest in the 80 acres of pasture land described above to her granddaughter.

Early in 1994, Virgil Long's will was probated. Even though Virgil's son was named in the will as executor and trustee of the Virgil Long Trust created thereunder, the son declined to serve in either of those capacities, and Virgil Long's granddaughter was appointed executor and trustee by the probate court. Over a year later, Vera Long executed a new will that invalidated her 1993 will. Vera Long's new will excluded her son and left all of Vera's property to her three granddaughters, including appellee.[2]

Thereafter, the appellee granddaughter brought an action to partition the 80 acres of pasture land. The granddaughter maintained that the land was owned by her in her individual capacity and by the Virgil Long Trust, for which she served as trustee. In support of the requested partitioning, the granddaughter claimed that the needs of the trust's beneficiary — Vera Long — would be best served if the interest in the pasture land owned by the trust were sold for Vera's benefit. The granddaughter later amended her petition to seek authorization for the sale of the entire 80 acres in order to divide the proceeds among the owners and to benefit Vera.

Vera Long's son opposed the partitioning, and sought to set aside the warranty deed that had transferred Vera Long's interest in the pasture land from Vera to her granddaughter in her individual capacity. The son claimed: (1) that the deed was procured by undue influence exerted by the granddaughter on Vera Long, and (2) that the deed was in conflict with the irrevocable 1993 "mutual will" of Virgil and Vera Long. On cross-motions for summary judgment, the trial court ruled in favor of the granddaughter.

1. Having reviewed the evidence of record, we agree with the trial court that there is no genuine issue of material fact regarding

---

[2] Vera Long's action had no impact upon her son's status as the sole remainder beneficiary under Virgil Long's will.

the son's contention that the warranty deed transferring Vera Long's interest in the pasture land from Vera to her granddaughter was procured by undue influence, and we conclude that summary judgment was properly awarded to the granddaughter on that issue.

The evidence shows that in 1993, when the warranty deed to the pasture land was executed, Vera Long and her granddaughter lived next door to one another, and the two women saw each other almost daily. The granddaughter assisted Vera Long with household chores and sometimes took meals to her grandmother. Additionally, Vera Long suffered from glaucoma, and her poor eyesight made it necessary for the granddaughter to drive Vera to and from appointments, the grocery store, etc., and to assist Vera in the routine writing of checks to pay her bills. The granddaughter provided this latter assistance by writing the required information on the checks (payee, amount, etc.) and then giving the checks to Vera for her signature. Accordingly, the evidence shows that the granddaughter was in a very close familial relationship with her grandmother, one typical of the relationships often found between independent aging persons and the family members who assist them in routine matters.

Vera Long's son, appellant, contends that this evidence also shows that the granddaughter, appellee, was in a confidential relationship with Vera Long. However, even if the son's contention is correct, the evidence of record does not authorize a finding that Vera Long was of a weak mentality, so that a confidential relationship with the granddaughter would create a rebuttable presumption of undue influence.[3] "[A] presumption of undue influence arises as a matter of law where the grantee of a gift of real property stands in a confidential relationship with the grantor of real property, **and** the grantor is of a weak mentality."[4] In the case of an elderly grantor such as Vera Long, "weak mentality" includes not only feeble-mindedness, "but also . . . the domination of the grantor by the grantee, exemplified by the grantee's provision of shelter and care."[5]

While the granddaughter did help Vera Long with household duties and provided transportation to Vera, the evidence of record shows that in 1993, when she executed the warranty deed transferring her half interest in the pasture land to her granddaughter, Vera lived independently in her own home, made her own business decisions, and conducted her own business affairs.[6] In 1993, Vera Long made her own appointments with her attorney and independently instructed her attorney as to the disposition of her estate. The evi-

---

[3] See *Tingle v. Harvill*, 228 Ga. 332, 338-339 (185 SE2d 539) (1971).
[4] *Mathis v. Hammond*, 268 Ga. 158, 160 (486 SE2d 356) (1997) (emphasis supplied.).
[5] Id. at 161.
[6] See *Thomas v. Garrett*, 265 Ga. 395, 397 (456 SE2d 573) (1995).

dence of record also shows that Vera Long cared for her personal matters without requiring outside assistance. For example, when she suspected a family member of removing personal items from her home, Vera Long independently took the necessary steps to ensure their return. As noted, the granddaughter did provide ministerial assistance to Vera Long when writing checks. However, the evidence of record shows irrefutably that such assistance was required due only to Vera's poor eyesight, and cannot be construed to reflect upon her ability to handle her own affairs. In fact, the evidence of record is clear that in 1993, when the pasture land was deeded to the granddaughter, Vera Long was a strong-willed and independent woman, capable of providing for her own shelter and care, and responsible for her own affairs, and the record contains no substantive evidence to show otherwise.

Accordingly, there was no genuine issue of material fact that prevented the trial court from entering summary judgment in favor of the appellee granddaughter on the appellant son's claim that the 1993 warranty deed executed by Vera Long was procured by undue influence.[7]

2. The trial court properly concluded that the 1993 will of Virgil and Vera Long was not a mutual will and thus could be revoked by Vera after Virgil's death. Accordingly, there was no conflict between the 1993 will and Vera Long's transfer of her interest in the pasture land to her granddaughter. Except for mutual wills based upon express contract, no will may be deemed mutual unless there is an express statement in the will that it is intended by the testator(s) to be a mutual will.[8] Virgil and Vera Long's 1993 will contains no statement indicating that they intended their will to be mutual, and there is no evidence of record to show the existence of an express contract between the Longs to execute mutual wills.[9] Thus, Vera Long was free to revoke her 1993 will.

Furthermore, we note that when the son declined to serve as

---

[7] Contrary to the son's contention, *Dyer v. Souther*, 272 Ga. 263 (528 SE2d 242) (2000), does not demand a different conclusion. Unlike the present appeal, the facts in *Dyer* showed that the testator (i.e., grantor) suffered from dementia at the time of making her will, and also expressed concern to other family members that she was being pressured by the propounder (i.e., grantee) to make a will. 272 Ga. at 265. Furthermore, the facts in *Dyer* indicated that the propounder had been misappropriating for his own use medical insurance benefits paid to the testator. Id. Thus, unlike the present appeal, our ruling in *Dyer* was based in large part upon evidence of a grantor of weak mentality and of a grantee who may have taken advantage of that situation for his own benefit.

[8] OCGA § 53-2-51 (b) (1993). Because Virgil Long died in 1993, and any rights under the allegedly mutual will vested at that time, the version of the statute in place at that time controls our disposition of this issue. See *Evans v. Palmour*, 274 Ga. 283, n. 1 (553 SE2d 585) (2001).

[9] See OCGA § 53-2-70 (1993).

executor of Virgil Long's 1993 will, he signed a sworn statement conceding that the will was joint and not mutual. Accordingly, the trial court properly concluded that the 1993 will of Virgil and Vera Long was a joint will, and properly granted summary judgment to the appellee granddaughter on the appellant son's claim seeking to set aside the 1993 warranty deed because it conflicted with the 1993 will.

3. The trial court did not err in authorizing the granddaughter, as trustee of the Virgil Long Trust, to sell the interest in the 80 acres of pasture land owned by the trust. The court specifically found that it was in the best interest of the beneficiary of the trust — Vera Long — that the property be sold to provide for her welfare. Contrary to the son's contention, exclusive jurisdiction over this matter did not rest in the probate court under OCGA § 15-9-30, as this situation was not one based upon the guardianship of a ward.[10]

*Judgment affirmed. All the Justices concur.*

DECIDED JANUARY 14, 2002.

*Vaughan & Evans, Donald C. Evans, Jr.,* for appellant.
*William A. Neel, Jr.,* for appellees.

---

[10] In 1998, five years after the events at issue in this appeal, Vera Long was institutionalized with Alzheimer's Disease, and the granddaughter was appointed her guardian. However, the granddaughter sought permission from the trial court to sell the half interest of the pasture owned by the Virgil Long Trust, for which she serves as trustee. While the granddaughter's duties as trustee and as guardian do overlap, she did not appear before the trial court in her capacity as guardian of Vera Long, and it is uncontroverted that Vera Long relinquished all her interest in the pasture land five years before it became necessary to appoint her a guardian.