## S05A1436. HODGES v. CALLAWAY.
### (621 SE2d 428)

THOMPSON, Justice.

In 1974 Patrick H. and Lucille Jones, husband and wife, jointly executed a will styled "Mutual Last Will and Testament of P.H. Jones and Mrs. Lucille C. Jones." The will designated the survivor as executor, and devised all personal property to the survivor, his or her heirs and assigns.[1] The relevant provision devised all real property owned by the testators to the survivor for life, with the right to sell or dispose of the property "if necessary for their (his or her) maintenance and support, without any limitations or restrictions." After the death of the survivor, the remainder of the real property was to be divided one-half to the siblings of Mr. Jones and one-half to the siblings of Mrs. Jones.

Mr. Jones died in 1986. The will was not offered for probate, and his estate was never administered. Within two weeks of Mr. Jones' death, Mrs. Jones executed a codicil solely for the purpose of naming an executor upon her death; she designated her husband's nephew, appellant Linton Hodges.

---

[1] Mr. and Mrs. Jones had no children.

In 1999 Mrs. Jones executed a "Deed of Gift," conveying a 150-acre tract of land to her second cousin, appellee William Callaway; this property was owned by the testators at the time of Mr. Jones' death. Mrs. Jones then executed a general power of attorney, appointing Callaway as her attorney-in-fact. Her signature on both documents was witnessed and notarized by State Court Judge Ronald W. Hallman and Probate Judge Darin McCoy.

Upon the death of Mrs. Jones in 2001, Hodges offered the will and codicil for probate. Hodges, thereafter, filed an action in his capacity as executor against Callaway seeking to set aside the deed of gift on grounds that (1) Mrs. Jones was precluded by the terms of the "mutual" will from disposing of the property; (2) the deed is null and void because Mrs. Jones was not competent to execute it; (3) Callaway exercised undue influence over her; and (4) Callaway breached his fiduciary duty as attorney-in-fact by accepting it.

Callaway filed an answer and counterclaim alleging fraud and breach of a covenant of warranty contained in the deed. The parties filed cross motions for summary judgment. The trial court denied Hodges' motion finding that the will is not mutual as a matter of law. The court also granted partial summary judgment to Callaway, finding that Mrs. Jones had sufficient mental capacity to execute the deed and power of attorney, that she was not unduly influenced by Callaway in executing those documents, that Callaway did not breach a fiduciary duty of loyalty to Mrs. Jones, and that Mrs. Jones had breached the covenant of warranty.[2] Hodges appeals.

1. Hodges asserts that Mr. and Mrs. Jones created a joint and mutual will, and that the deed of gift of the 150-acre tract of land to Callaway contravened the terms of that instrument. Callaway contends that the will, although joint, was not mutual and did not preclude Mrs. Jones from making an inter vivos gift of the property to him.

The parties also disagree as to which version of the Probate Code governs the will in issue: Callaway relies on OCGA § 53-2-51 of the 1967 Code, which was in place at the time of Mr. Jones' death; and Hodges submits that the will is controlled by OCGA §§ 53-4-30 and 53-4-31 of the Revised Probate Code of 1998, OCGA § 53-4-1 et seq., which was in effect at the time of the conveyance to Callaway, and at Mrs. Jones' death.[3] For the reasons which follow, under either version of the Code, the conveyance to Callaway was authorized.

---

[2] By way of his counterclaim, Callaway sought compensatory and punitive damages in the amount of $1,000,000. The issue of damages remains pending below.

[3] In this regard, see *Long v. Waggoner*, 274 Ga. 682, 685 (2), n. 8 (558 SE2d 380) (2002) (applying the 1967 Code, the Court determined that any rights under an allegedly mutual will vested at the death of the first testator).

The distinction between joint and mutual wills was explained in *Webb v. Smith*, 220 Ga. 809, 811-812 (141 SE2d 899) (1965):

(a) a joint will — that is a simple testamentary instrument constituting the wills of two or more persons in which they dispose of their joint property or the separate property of each so that at the death of one party it may be probated as his last will although the other maker or makers are still in life, and may as to them be probated *if not subsequently revoked* and (b) a mutual will, which is one that contains reciprocal provisions giving the separate property of each testator to the other and is executed jointly and *shows on its face to be in the performance of an agreement between the parties* and *on the death of one the will of the survivor no longer exists.*

(Emphasis supplied.) The 1967 Code provided that "[m]utual wills may be made either separately or jointly . . . (b) Except for mutual wills based on express contract, no wills shall be or shall be construed to be mutual wills unless there is contained in both wills an express statement that the wills are mutual wills." OCGA § 53-2-51. "The purpose of this provision was to eliminate the uncertainty that had crept into the law through the practice of courts, on an ad hoc basis, of finding wills to be 'mutual' by implication." *Coker v. Mosley*, 259 Ga. 781 (1) (387 SE2d 135) (1990). Also under the 1967 Code, a testator retained the authority to revoke a will, "even in the case of mutual wills with a covenant against revocation." OCGA § 53-2-70. Thus, the earlier version of the Probate Code required an express contract or an express statement of intent as to the mutuality of a will. See *Long v. Waggoner*, 274 Ga. 682, 685 (2) (558 SE2d 380) (2002) and *Coker v. Mosley*, supra at 781 (1) (both interpreting 1967 Probate Code). Compare *Johnson v. Harper*, 246 Ga. 124 (1) (269 SE2d 16) (1980) (will was mutual where it included an express statement of intent that survivor would not have the right to dispose of property in manner other than specified in the will). Neither an express contract nor an express statement of mutuality is present here.

Under the Revised Probate Code of 1998, "(a) A joint will is one will signed by two or more testators that deals with the distribution of the property of each testator. . . . (b) Mutual wills are separate wills of two or more testators that make reciprocal dispositions of each testator's property." OCGA § 53-4-31. In addition, "[a] *contract* made on or after January 1, 1998, that obligates an individual to make a will or a testamentary disposition, not to revoke a will or a testamentary disposition, or to die intestate *shall be express and shall be in . . . writing.*" (Emphasis supplied.) OCGA § 53-4-30. However, "[t]he

execution of a joint will or of mutual wills does not create a presumption of a contract not to revoke the will or wills." OCGA § 53-4-32. Thus, under the 1998 Code, the will in issue here is joint, but not mutual, and was revocable by Mrs. Jones under OCGA § 53-4-30 because there was no express, written contract to the contrary.

Hodges, however, relies on the doctrine that equity may intervene to enforce the provisions of a mutual will by specific performance to prevent fraud. See, e.g., *C & S Nat. Bank v. Leaptrot*, 225 Ga. 783 (1) (171 SE2d 555) (1969); *Webb v. Smith*, 220 Ga. 809 (141 SE2d 899) (1965); *Clements v. Jones*, 166 Ga. 738 (144 SE 319) (1928). The limited application of the fraud exception applies:

> [W]here the mutual wills are the result of a contract based upon a valid consideration, and where, after the death of one of the parties, the survivor has accepted benefits under the will of the other which was executed pursuant to an agreement. In such cases, where all the facts are fully proved, equity will interpose to prevent fraud.

Id. at 743. That case further explains:

> In view of the fact that our Code specifically provides that mutual wills may be revoked, a court of equity will not hold them irrevocable upon the ground that they were made in pursuance of an agreement, unless such agreement is *clear and definite*. Unless the petition for specific performance sets up such clear and definite agreement, it is demurrable.

(Emphasis supplied.) Id. at 746.

The only references to mutuality in the will executed by Mr. and Mrs. Jones are in the title of the instrument and the attestation clause. This is insufficient to constitute an "express statement" required by OCGA § 53-2-51, or the express written "contract" requirement of OCGA § 53-4-30. Nor does the document constitute a clear and definite agreement so as to trigger the fraud exception set forth in *Clements*, supra. Accordingly, Mrs. Jones was not precluded by the terms of the will from executing the deed of gift to Callaway, and equity will not intervene to enforce the will.

2. Callaway sought and was granted summary judgment on the grounds that Mrs. Jones was mentally competent to execute the deed of gift and power of attorney, and that she was not unduly influenced by Callaway. Hodges submits that genuine issues of material fact remain as to these issues.

Callaway's summary judgment motion was supported by the affidavits of Judges Hallman and McCoy which address the circumstances under which Mrs. Jones executed the power of attorney and deed of gift. Both judges averred that they agreed to witness Mrs. Jones' signature on the documents only if she could satisfy them that she understood the effect of the documents and that she was acting of her own free will. The judges met with Mrs. Jones privately and discussed with her the deed of gift which Callaway had prepared. They explained that her signature would permanently transfer ownership of the property to Callaway, and they suggested the option of retaining a life estate for herself and giving Callaway a remainder interest. She maintained that she had no need for the property and she wanted to transfer it to Callaway to keep the land in the family. They then asked her whether she was making the gift of her own free will, and she assured them that she was doing exactly what she wanted to do and that the gift was her own idea. She signed the deed of gift in the presence of the judges who witnessed and notarized the document. The judges then went through a similar inquiry with respect to her decision to select Callaway as her attorney-in-fact. After they were satisfied that Mrs. Jones understood the effect of the power of attorney and that she had made the decision on her own, they witnessed her signature on that document.

In opposition to summary judgment, Hodges relied on his verified complaint and the affidavit of Mrs. Jones' niece, which, as the trial court correctly determined, at most established forgetfulness due to advanced age, not mental incompetence. See *Armour v. Peek*, 271 Ga. 202 (2) (517 SE2d 527) (1999). "In order to avoid a contract on the ground of mental incapacity of the maker, he must have been non compos mentis, that is, entirely without understanding, at the time the contract was executed." Id. at 203, quoting *Jones v. Smith*, 206 Ga. 162 (8) (56 SE2d 462) (1949). Thus, nothing in the evidence of record shows that Mrs. Jones was not competent to convey her property at the time she executed the deed. *Armour*, supra. Accordingly, Callaway discharged his burden on motion for summary judgment as to the issues of Mrs. Jones' mental capacity, and whether she was unduly influenced by Callaway. Since Hodges did not come forward with specific evidence giving rise to a triable issue, partial summary judgment was properly granted. *Lau's Corp. v. Haskins*, 261 Ga. 491 (405 SE2d 474) (1991).

3. Hodges also asserts that the trial court erred in granting summary judgment to Callaway based on the finding that he did not violate his fiduciary duty to Mrs. Jones by accepting her deed of gift and power of attorney.

In *Jordan v. Stephens*, 221 Ga. App. 8 (1) (470 SE2d 733) (1996), the court addressed the question of whether an attorney-in-fact is precluded as a fiduciary from accepting an inter vivos gift from his principal:

> While recognizing that the power of attorney created a fiduciary relationship which required a duty of loyalty to the principal ... absent fraud in obtaining the power of attorney, the . . . transfers were proper because an agent is not absolutely prohibited from making gifts of the principal's property, the power of attorney expressly conferred the right to [the] transfer . . . and the evidence indicated that the [principal] intended the transfer to occur.

Id. at 9. See also *LeCraw v. LeCraw*, 261 Ga. 98 (401 SE2d 697) (1991) (an attorney-in-fact is not absolutely prohibited from making gifts of the principal's property).

Because Hodges offered no contradictory evidence, the affidavits of Judges Hallman and McCoy constitute the only evidence of the circumstances under which Mrs. Jones executed the deed of gift and power of attorney. Thus, the unrefuted evidence shows that Mrs. Jones executed the documents freely and voluntarily, and in the absence of fraud. The trial court correctly concluded as a matter of law that Callaway did not violate his fiduciary duty and was not precluded from accepting a gift from Mrs. Jones as his principal because the gift was made at the principal's direction and approval. *Jordan*, supra at 9.

4. Hodges contends that the issue of whether Mrs. Jones breached a covenant of warranty of title contained in the deed of gift was not properly before the trial court for adjudication on summary judgment.

On summary judgment, Hodges argued alternatively that Mrs. Jones held only a life estate in the subject property and, therefore, could convey only a life estate to Callaway. In opposition, Callaway asserted that since Mrs. Jones already owned a one-half undivided interest in the property at the time of her husband's death, that interest is vested in Callaway by virtue of the deed of gift; however, under the warranty provision of the deed, her estate would be liable to Callaway for the remaining half of the property which he also is entitled to receive.

After concluding that Mrs. Jones was not precluded by the will from making the gift to Callaway, the trial court went on to construe the will to determine what property interest was conveyed in the deed by Mrs. Jones to Callaway. The court determined that Mrs. Jones was only able to convey to Callaway her one-half undivided interest and

her life estate in the other half devised to her by her late husband. Since the deed of gift contained language wherein Mrs. Jones expressly covenanted that she had fee simple title to the property and the right to convey it in fee simple to Callaway, the court determined as a matter of law that Mrs. Jones breached the warranty contained in the deed, but left the measure of damages for resolution by a jury.

"[W]hile in most cases it is better practice to await a motion for summary judgment before entering it for a party, it was not erroneous under the circumstances of this case, where the issues were the same as those involved in the movant's motion, hence the opposing parties had notice thereof." *Cruce v. Randall*, 245 Ga. 669, 671 (266 SE2d 486) (1980). Compare *Covington v. Countryside Investment Co.*, 263 Ga. 125, 127 (3) (428 SE2d 562) (1993). Here, the issue was properly considered by the court.

5. Finally, Hodges asserts that the trial court erred in ruling as a matter of law that Mrs. Jones breached the warranty of title by conveying less than a fee simple interest to Callaway. Where a deed of gift contains covenants of warranty, an action for breach of that warranty may be maintained. *Smith v. Smith*, 243 Ga. 56, 57 (252 SE2d 484) (1979). We find no error.

*Judgment affirmed. All the Justices concur, except Benham, J., who concurs in judgment only.*

DECIDED OCTOBER 24, 2005.

*Thomas A. Nash, Jr., Savage, Turner, Pinson & Karsman, Stanley Karsman*, for appellant.

*Callaway, Neville & Brinson, William J. Neville, Jr.*, for appellee.