S11A0374. DAVIS v. PARRIS et al.
(710 SE2d 757)

BENHAM, Justice.

In January 1980, husband and wife Grady and Fronice Price executed a will which was expressly identified as being "joint and

---

mutual." Grady and Fronice had two children (appellant Deana and appellee Diane), and Grady had two other children (David and appellee Darrell) from a prior marriage. In the 1980 will, Grady and Fronice bequeathed all of their property to each other as the survivor in fee simple. At the death of the survivor, the residue of the estate was to be divided equally among the four children. The relevant language in the will is as follows:

> We, E. GRADY AND FRONICE PRICE, of said State and County, being of sound and disposing minds and memories, hereby make, publish and declare this our joint and mutual Last Will and Testament, hereby revoking any and all others by us heretofore made, as follows:
>
> ### ITEM III
> We will, bequeath all of our property, both real and personal, of whatever kind and whereever situated, to the survivor, to be his or hers, as the case may be, in fee simple forever, to do with as he or she sees fit.
>
> ### ITEM IV
> In the event that our deaths should occur simultaneously, or at the death of the survivor, it is our will and desire that any residue of our Estate be divided equally among our children, DARRELL PRICE, DAVID PRICE, DIANE PRICE, and DEANA PRICE, share and share alike.

Grady Price died in July 2005 and Fronice probated the 1980 will in Gwinnett County. Pursuant to the 1980 will, Fronice became the executor and she conveyed Grady's estate to herself. In November 2005, Fronice executed another will which would, at Fronice's death, leave 20% of the estate to appellant Deana Davis and the residue to the children of Deana and Diane. Nothing would be left to David, appellee Darrell, or Darrell's child. Appellant Deana then obtained Fronice's power of attorney and conveyed all of her mother's real estate to her two children and to appellee Diane's child. When Fronice died in 2008, Deana offered the 2005 will for probate in Gwinnett County. Diane filed a caveat and also sought to petition the 1980 will as the last will and testament of Fronice.[1]

Deana filed a motion for judgment on the pleadings and appellees Diane and Darrell cross-filed a motion for partial summary judgment. The trial court held a hearing on both motions. In denying Deana's motion and granting appellees' partial motion for summary judgment, the trial court determined that the 1980 will was joint and

---

[1] The caveat and petition are stayed pending this appeal.

mutual according to the law that existed prior to the adoption of the 1998 probate code and, as such, could not be revoked by Fronice's 2005 will. As a remedy, the trial court ordered that the 1980 will be specifically enforced by equity.

1. Appellant alleges the trial court erred when it determined that the 1998 probate code did not apply to the case. When construing the devises in a will, the law at the time of the testator's death is the law to be applied. OCGA § 53-4-2; *Payne v. Payne*, 213 Ga. 613 (100 SE2d 450) (1957). In this case, however, the issue is not the propriety of the devises in the 1980 will but whether Grady and Fronice had a contract not to revoke the 1980 will. When determining whether a contract exists, the law at the time the contract was made is the relevant law to be applied. *Magnetic Resonance Plus, Inc. v. Imaging Systems Intl.*, 273 Ga. 525 (2) (543 SE2d 32) (2001), citing to *McKie v. McKie*, 213 Ga. 582 (2) (100 SE2d 580) (1957). Also, the 1998 probate code only applies to contracts entered into on or after January 1, 1998 (OCGA § 53-1-1), so it would not apply to any contract allegedly made in 1980. Accordingly, the trial court did not err when it applied the law in place before the 1998 probate code was adopted to determine whether Grady and Fronice Price had a contract not to revoke the 1980 will.

2. Appellant contends that the trial court erred in finding that the 1980 will was "joint and mutual" such that a contract not to revoke existed. We disagree. At the time the will was executed and prior to the adoption of the 1998 probate code, a mutual will was a will that made reciprocal devises of property and could be separately or *jointly* executed. *Ricketson v. Fox*, 247 Ga. 162 (3) (274 SE2d 556) (1981) (citing Code Ann. § 113-104,[2] precursor to what the parties cite as OCGA § 53-2-51). If a mutual will was jointly executed, both testators signed a single document and the document was probated upon each testator's death. See, e.g., *Lampkin v. Edwards*, 222 Ga. 288, 290 (149 SE2d 708) (1966).[3] If a will expressly stated that it was joint and mutual, and the surviving testator benefitted from the mutual promises made therein, then there was an enforceable contract not to revoke. *Johnson v. Harper*, 246 Ga. 124 (1) (269 SE2d 16) (1980) (will evidenced an irrevocable contract where will was joint and mutual, and the survivor benefitted from the mutual

---

[2] "Code § 113-104, declares: 'Mutual wills may be made either separately or jointly, and the revocation of one shall be the destruction of the other.'" *Lampkin v. Edwards*, supra, 222 Ga. at 289.

[3] Under the current 1998 probate code, mutual wills are wills by two or more testators who make reciprocal devises to each other in each of their respective wills. OCGA § 53-4-31 (b). A joint will is simply a single will executed by two or more testators. OCGA § 53-4-31 (a). Thus, as the code currently exists, mutual wills and joint wills are mutually exclusive.

promises made therein). See also *C&S Nat. Bank v. Leaptrot*, 225 Ga. 783, 786 (171 SE2d 555) (1969). "A written agreement between A and B whereby A agrees to convey certain described real estate to B in consideration of B's agreement to convey certain described real estate to A is such valuable consideration as will support an enforceable contract." *Webb v. Smith*, 220 Ga. 809, 812 (141 SE2d 899) (1965) (a joint will executed by two testators was held to be mutual for the reciprocities made therein). Even if a joint and mutual will is technically revoked (i.e., by survivor's remarriage), interested parties may still have an action on the underlying contract not to revoke and obtain the remedy of specific performance. *Johnson v. Harper*, supra, 246 Ga. at 125-126; *C&S Nat. Bank v. Leaptrot*, supra, 225 Ga. at 786-787 ("It is the contract and not the mutual will which is irrevocable.").

Grady and Fronice's 1980 will follows the pattern referenced above in *Webb v. Smith*, supra. Grady and Fronice each agreed to give the other certain described real and personal property as valuable consideration if one or the other survived. They also agreed that if they died simultaneously, or at the survivor's death, that the residue of the estate would go to the four children, all of whom were biologically Grady's children and two of whom were biologically Fronice's children. When Grady died in 2005, Fronice, as the survivor, benefitted from the 1980 will when she probated it as Grady's last will and testament and conveyed Grady's entire estate to herself.[4] Based on these facts and the law applicable at the time, the trial court did not err when it concluded the 1980 will was joint and mutual and that Grady and Fronice had an enforceable contract not to revoke the 1980 will. *Johnson v. Harper*, supra, 246 Ga. at 125; *Ammons v. Williams*, 233 Ga. 534 (212 SE2d 769) (1975).

3. Appellant argues that the trial court erred by finding that the 1980 will's fee simple conveyance to Fronice was a marital trust. The trial court's order stated:

> A fee simple grant to the survivor with a provision that "any residue" go to the remainder beneficiaries *operates as a substitute for a marital trust*, and affords the survivor the economic flexibility to sell or convey the assets to the extent necessary for their care and support, with the remainder to be divided as agreed, without the expense and complexity of a trust.

---

[4] Accordingly, this case is distinguishable from *Hodges v. Callaway*, 279 Ga. 789 (621 SE2d 428) (2005) where the will at issue was not probated and the survivor received no benefit from the probate of the will.

(Emphasis supplied.) From the plain language of the order, it appears the trial court was making an analogy and did not in fact find that the fee simple conveyance to Fronice was a marital trust. Accordingly, this enumerated error is without merit.

4. Appellant alleges that appellees should not have prevailed on their partial summary judgment because there is an issue of fact as to whether Fronice's second will executed in 2005 evidenced a contract. The trial court made no ruling as to whether Fronice's 2005 will was a contract and, as such, that issue cannot be raised on appeal. *Brookfield Country Club v. St. James-Brookfield, LLC*, 287 Ga. 408 (3) (696 SE2d 663) (2010).

5. Appellant contends that the trial court's grant of specific performance of the contract is error because the joint and mutual will is not definite, clear, or precise. To the contrary, the 1980 will specifically provides that the residue of the survivor's estate is to be divided equally among Grady's four children. This allegation of error lacks merit.

6. During the motions hearing, appellees presented a certified copy of one of the wills referenced in *Simmons v. Davis*, 240 Ga. 282 (240 SE2d 33) (1977) to the trial court without any objection from appellant. A certified copy of the 1976 will appears in the record on appeal. Appellant now complains that the 1964 will referenced in *Simmons* is not in the record for this case. This purported error or oversight is inapposite as it is not germane to this Court's review.

*Judgment affirmed. All the Justices concur, except Carley, P. J., who concurs specially.*

CARLEY, Presiding Justice, concurring specially.

I concur in the judgment of affirmance, but write separately because the analysis in Division 2 of the majority opinion is incomplete. Determination of whether the 1980 will was "mutual" such that an enforceable contract not to revoke the will existed must begin with former OCGA § 53-2-51 (b),

> which was effective until January 1, 1998, and read: "(e)xcept for mutual wills based on express contract, no wills shall be or shall be construed to be mutual wills unless there is contained in both wills an express statement that the wills are mutual wills."

*Bandy v. Henderson*, 284 Ga. 692, 695 (4) (670 SE2d 792) (2008). "The purpose of this provision (Ga. L. 1967, p. 719) was to eliminate the uncertainty that had crept into the law through the practice of courts, on an *ad hoc* basis, of finding wills to be 'mutual' by *implication*." (Emphasis in original.) *Coker v. Mosley*, 259 Ga. 781 (1)

(a) (387 SE2d 135) (1990). Thus, the earlier version of the Probate Code required either an express contract or an express statement that the joint or separate wills are mutual. *Hodges v. Callaway*, 279 Ga. 789, 791 (1) (621 SE2d 428) (2005). Although there is no evidence of an express contract to refrain from revoking the 1980 will, the body of that will does contain an express statement that the joint will is mutual. Compare *Hodges v. Callaway*, supra at 792 (1) (references to mutuality in the will which were in the title of the instrument and the attestation clause were insufficient to constitute the express statement contemplated by OCGA § 53-2-51 (b) that the will was mutual).

The majority's extensive reliance upon *Johnson v. Harper*, 246 Ga. 124, 125 (1) (269 SE2d 16) (1980) is problematic because, although the will at issue in that case contained an express statement that it was a mutual will, the opinion in *Harper* fails to recognize the importance of that statement and instead relies heavily on *Simmons v. Davis*, 240 Ga. 282, 283 (1) (240 SE2d 33) (1977). Although *Simmons* was decided ten years after the effective date of the 1967 amendment, it makes no mention of the amendment. To the extent that *Simmons* and the majority opinion in this case omit the requisite application of former OCGA § 53-2-51 (b), their holdings are "contrary to the plain meaning of the statute." *Coker v. Mosley*, supra at 781 (1) (a), fn. 1.

Nevertheless, because the body of the 1980 joint will does contain an express statement that it is mutual, because the devises therein are wholly reciprocal, and because the surviving testator benefitted therefrom, I agree with the majority that, under applicable law preceding the effective date of the Revised Probate Code of 1998, a contract not to revoke the will existed and was specifically enforceable. I also note that the analysis under the Revised Probate Code would be entirely different. See *Hodges v. Callaway*, supra at 791-792 (1). Accordingly, I respectfully concur specially in the affirmance of the trial court's judgment.

DECIDED MAY 16, 2011.

*Charles A. Tingle*, for appellant.
*Caldwell & Watson, Harry W. MacDougald, Floyd E. Propst III, Tracy S. Drake*, for appellees.