## S04A0301. CANDIES v. HULSEY.
(593 SE2d 353)

CARLEY, Justice.

In November of 1998, Ruby Pinion suffered a stroke and, in March of the following year, she fell and was hospitalized. From that time until her death in March of 2001, she lived either in a nursing home or in a hospital facility. In the past, Ms. Pinion had executed documents which were identified as her will. In June of 1999, Ms. Pinion, who was then 78 years old, signed another document by which she rescinded an existing power of attorney and named her niece, Linda Candies (Propounder), as medical guardian. In addition, the instrument stated that "[a]s to my personal belongings, such as household furnishings and all personal belongings, I leave to [Propounder] solely to disperse as she deems proper." The document was executed in the nursing home where Ms. Pinion was then residing, and was witnessed by three individuals and notarized. It also bore Propounder's signature, expressing her acceptance of responsibility for her aunt's medical decisions, and acknowledging that she would disperse Ms. Pinion's personal effects in accordance with her judgment.

After Ms. Pinion died, Propounder sought to probate the document as a will. The decedent's sister, Lorraine Hulsey (Caveator), filed a caveat, challenging the validity of the instrument as a will. The probate court found in favor of Propounder. On appeal, the superior court heard the case without a jury, and ruled that the writing was not a valid will. Propounder appeals from that order of the superior court.

1. Propounder urges that the superior court misconstrued the instrument. According to her, the language used in the document and the circumstances surrounding its execution show that it was intended to be Ms. Pinion's will.

The appeal from the probate court to the superior court was a de novo proceeding. OCGA §§ 5-3-2, 5-3-29. The superior court, sitting as the trier of fact, found that the instrument was not a will, and this Court must affirm that finding if it is supported by sufficient evidence. *Dyer v. Souther*, 272 Ga. 263, 266 (4) (528 SE2d 242) (2000). In

making that determination, we must construe the evidence most favorably for the Caveator. See *McBride v. Jones*, 268 Ga. 869, 870 (2) (494 SE2d 319) (1998).

A will is the legal expression of a person's wishes as to the disposition of his or her property after death. *Kirksey v. Teachers' Retirement System of Ga.*, 250 Ga. 884, 886 (2) (302 SE2d 101) (1983). It takes effect only upon the death of the maker. *Schriber v. Anderson*, 205 Ga. 343 (3) (53 SE2d 490) (1949). Thus, a will differs from an inter vivos instrument, such as a deed, which conveys a present interest in the grantor's estate. *Martin v. Smith*, 211 Ga. 600, 603 (1) (87 SE2d 406) (1955). Testamentary intent "is determined from the instrument and parol evidence of the surrounding facts and circumstances at the time of its execution. [Cit.]" *Brown v. Butts*, 227 Ga. 591, 592 (1) (182 SE2d 99) (1971).

Although no particular words are necessary to constitute a will, the document signed by Ms. Pinion is not drafted in the usual form of a will. In this regard, it differs from the writings that she previously executed and denominated as her will. Propounder does not offer any explanation for why Ms. Pinion would choose to deviate from her earlier practice and fail to identify the document that she executed in June of 1999 as her will. A primary aim of the document was to create a medical guardianship, which obviously serves an inter vivos purpose and, thus, is completely inconsistent with a will which takes effect only upon death. Moreover, it refers only to Ms. Pinion's "personal belongings," such as her "household furnishings," and, thus, does not purport to constitute a complete disposition of all of Ms. Pinion's estate.

Propounder places great emphasis upon her aunt's expression of the intent to "leave" the personal items to her. However, that word does not always connote a bequest or devise. "Leave" also can mean "[t]o give over to another to control or act upon." The American Heritage Dictionary, 721 (Second College Edition). At the time she executed the instrument, Ms. Pinion had been absent from her residence for a long time and, considering the state of her health, she must have been aware of the very real possibility that she might never be able to return. Under those circumstances, it would be logical for her both to create a medical guardianship and to make a present disposition of those personal effects, such as her household furnishings, for which she would have no future use. Accordingly, she determined that she would name Propounder as the medical guardian and "leave" it up to her to dispose of those items. There is nothing to indicate that Ms. Pinion intended that she retain ownership of her personal belongings until her death. Instead, the evidence is consistent with the intent to make an inter vivos disposition of them through Propounder. If it was her intention to transfer a present interest, the

instrument is not a will. *Martin v. Smith,* supra at 603 (1).

The evidence authorized the superior court to find that the document served only inter vivos purposes. Having been confined to a nursing home, Ms. Pinion intended to name a medical guardian and to dispose of her "personal belongings" for which she no longer had any use. Because the evidence is sufficient to support the superior court's finding, it must be affirmed.

2. Propounder's remaining enumeration urges that she is entitled to the entirety of the estate under her aunt's will. However, the document is not Ms. Pinion's will and, under its terms, Propounder is entitled only to the personal belongings that her aunt owned at the time she executed the document in June of 1999. Any property that Ms. Pinion owned at the time of her death does not pass to Propounder under that instrument.

*Judgment affirmed. All the Justices concur.*

DECIDED MARCH 1, 2004.

*Renzo Wiggins,* for appellant.
*Ensign & Bowe, Peter C. Ensign,* for appellee.