In the Supreme Court of Georgia

Decided: April 4, 2016

S16A0437. ORAVEC v. PHILLIPS et al.

MELTON, Justice.

Following the trial court's grant of summary judgment to James G. Phillips and Larry Wyman Phillips in their capacity as co-executors of the estate of Opal Anderson Phillips (Opal), Mary Elizabeth Oravec appeals, contending that the trial court erred in its determination that Opal's 2007 will should be admitted to probate. Specifically, Oravec contends that the 2007 will violated the terms of a previous joint will that contractually could not be revoked by Opal. For the reasons set forth below, we affirm.

1. In the light most favorable to Oravec, the nonmovant, the record shows that, on January 27, 1997, Opal and her husband, George Phillips, executed a single will that recited only that it was a "joint" will.[1] This will devised and bequeathed the property of the first spouse to die to the survivor, and, upon the

---

[1] This will made minor revisions to and replaced a joint will executed on August 11, 1992.

death of the surviving spouse, certain real estate holdings were devised to Oravec, their daughter, and all cash was bequeathed to James and Larry, their sons.[2] The will contains no statement that it was intended to contractually bind George and Opal to its reciprocal testamentary scheme. On September 5, 1998, George predeceased Opal, and Opal received all property held by him pursuant to the joint will.

In 2004, Opal drafted a new will, expressly revoking the 1997 joint will. Under the 2004 will, Opal devised and bequeathed the bulk of her property, including her real estate holdings, to James and Larry, who were also named as co-executors. Opal expressly disinherited Oravec. The will explains that Opal had "adequately given [Oravec] her part of [Opal's] estate before [Opal's] death." The attorney who drafted the 2004 will testified that Opal disinherited Oravec because she had loaned Oravec a significant amount of money during life, Oravec had not repaid the loans, and that Opal believed Oravec had already received enough. In 2007, Opal executed her final will, which simply made minor revisions to the 2004 will regarding the disposition of small items of

---

[2] In addition, the will contained a number of bequests of personal property.

personal property.

Opal died in February 2014, and James and Larry offered the 2007 will for probate. Oravec filed a caveat, contending that: (1) the 1997 joint will was intended to be both joint and contractually binding; (2) as a result, Opal could not revoke the 1997 joint will after she benefitted from its probate; and (3) because of this fact, the 2007 will was invalid. In support of her contentions, Oravec filed an affidavit maintaining that Opal and George conducted a family meeting in 1992 and expressed a plan to execute a will that would devise certain real estate to Oravec after the death of George and Opal. Based on this affidavit, Oravec filed a motion for summary judgment, and James and Larry, as co-executors, filed a cross-motion for summary judgment. The trial court denied Oravec's motion, but granted the motion of the co-executors, finding that the 2007 will should be probated. This appeal followed.

2. The operative question in this case is whether Opal had any contractual obligation to George arising from the 1997 will that prevented her from revoking that will and changing her testamentary plan following George's death. There is no evidence of any such obligation.

In order to examine the contents and the nature of the 1997 joint will, we

3

must apply the version of our Probate Code that was in effect on the date of the death of the first of the two makers. See <u>Long v. Waggoner</u>, 274 Ga. 682 (2) (558 SE2d 380) (2002).[3] Therefore, our current Probate Code, effective as of January 1, 1998, applies for purposes of defining the 1997 Will. Under the Revised Probate Code of 1998, "(a) A joint will is one will signed by two or more testators that deals with the distribution of the property of each testator . . . . (b) Mutual wills are separate wills of two or more testators that make reciprocal dispositions of each testator's property." OCGA § 53-4-31. In addition, "[a] contract made on or after January 1, 1998, that obligates an individual to make a will or a testamentary disposition, not to revoke a will or a testamentary disposition, or to die intestate shall be express and shall be in . . . writing." OCGA § 53-4-30.[4] However, "[t]he execution of a joint will or of mutual wills does not create a presumption of a contract not to revoke the will or wills." OCGA § 53-4-32. Applying the Revised Probate Code, the 1997 will

---

[3] "Mutual wills" are defined differently in the Revised Probate Code of 1998 and the Code directly preceding it. It is necessary to use the date of the last testator's death to determine the appropriate definition to apply.

[4] This rule has no application in the current case as, even if a contract existed, it would have been created prior to January 1, 1998.

is merely joint, and it contains no contractual language indicating any intent of George or Opal that it should be considered irrevocable.

In addition, there is no evidence of any external contractual agreement that could create irrevocability. "When determining whether a contract exists, the law at the time the contract was made is the relevant law to be applied. Magnetic Resonance Plus, Inc. v. Imaging Systems Intl., 273 Ga. 525 (2) (543 SE2d 32) (2001), citing to McKie v. McKie, 213 Ga. 582 (2) (100 SE2d 580) (1957)." Davis v. Parris, 289 Ga. 201, 203 (1) (710 SE2d 757) (2011). While Oravec provided an affidavit in which she states that, at a 1992 family meeting, George and Opal shared their intent to create a will with provisions similar to the 1997 will, there is no indication that they intended to be *contractually bound* to do so or that they intended that the survivor of the two of them should be contractually prevented from revoking the 1997 will. Moreover, to the extent that relevant portions of the 1967 Probate Code might be considered appropriate "contract law" applicable at the time any alleged contract could have been entered by Opal and George, Oravec's contentions still fail. Under the 1967 Probate Code, wills which contained a binding contractual agreement were sometimes referred to as

mutual wills.[5] "Mutual wills may be made either separately or jointly . . . (b) Except for mutual wills based on express contract, no wills shall be or shall be construed to be mutual wills unless there is contained in both wills an express statement that the wills are mutual wills." OCGA § 53-2-51 (1967 Version). Thus, the earlier version of the Probate Code required an express contract or an express statement of intent as to the mutuality of a will. Neither is present in this case.

For all of the reasons set forth above, the trial court did not err in its determination that Opal's 2007 will should be admitted to probate.

Judgment affirmed. All the Justices concur.

---

[5] The confusion caused by this terminology was addressed in the 1998 Probate Code. Under the current Code, there is no longer any requirement that a will must contain contractually binding language to be considered "mutual."